340 F.Supp. 1158 (1972)
BAUM ASSOCIATES, INC., a Corporation, Plaintiff,
v.
SOCIETY BRAND HAT COMPANY, a Corporation, Defendant.
No. 70 C 158(4).
United States District Court, E. D. Missouri, E. D.
March 8, 1972.
*1159 Hyman G. Stein and Charles A. Seigel, St. Louis, Mo., for plaintiff.
Blumenfeld, Kalishman, Marx & Tureen, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
Plaintiff instituted this action to recover commissions allegedly due it on production of trousers by defendant for McGregor Doniger, Inc., Campus Sweater and Sportswear Company and Comus Manufacturing Company. The cause was tried to the Court without a jury and submitted for a determination upon the merits.
Plaintiff is a corporation organized and existing under the laws of New York with its principal place of business in New York. Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business in St. Louis, Missouri. The amount in controversy exceeds $10,000.00, exclusive of costs and interest. This Court has jurisdiction by virtue of 28 U.S.C. § 1332(a).
Baum Manufacturing Corporation was formed in 1946 and was dissolved on August 7, 1962. Plaintiff corporation was formed in 1960 and remained inactive until August 7, 1961. When Baum Manufacturing Corporation was liquidated, all of its assets were transferred to its shareholder, Elias A. Baum, who started doing business as Baum Associates, Inc. (plaintiff). Defendant, which is the successor to Apparelcraft, Inc., contends that no contract rights of Baum Manufacturing Corporation were ever assigned to plaintiff or to Elias A. Baum, and therefore plaintiff has no interest in any contracts entered into by Baum Manufacturing Corporation.
This issue is resolved preliminarily in order to simplify the discussion of the facts of this case. The Court finds that, although no formal assignment was made to plaintiff by Baum Manufacturing Corporation, the defendant paid monies on the various contracts to plaintiff and wrote letters concerning disputed items to plaintiff as if such assignment had been made. The Court concludes that defendant is estopped to disclaim the succession in interest.
During the span of time encompassing the events giving rise to this controversy, there were four corporations involved as parties to the alleged contracts or as parties to this action. As a practical matter, the dispute is between two individuals, Elias A. Baum (plaintiff) and Frank J. Novoson (defendant). In the discussion of this case, the Court will refer to "plaintiff" or "Baum" and to "defendant" or "Novoson" concerning the alleged contractual obligations, particularly for the reason that much of the evidence involves letters exchanged by the two individuals.
This Court has previously entered its Memorandum and Order denying defendant's motion for summary judgment and undisputed facts as detailed therein will not necessarily be repeated here.
Both plaintiff and defendant are engaged in the manufacture of wearing apparel. In addition, plaintiff acts as representative of other firms.
In October, 1959, plaintiff entered into a written agreement whereby defendant agreed to employ plaintiff to procure contracts for defendant for the manufacture of trousers from McGregor-Doniger, Inc. and its affiliates. Defendant agreed to pay plaintiff five cents (5¢) per pair of trousers on "all contracts, orders or reorders procured by either Baum Manufacturing Corp. or *1160 Apparelcraft, Inc. from the above two firms."
Also in October, 1959, plaintiff and defendant entered into a second written agreement, identical to the above-described agreement except that the contracts were to be procured from Levi-Strauss & Company and the commission was two and one-half cents (2½¢) per pair of trousers. Plaintiff is making no claim with respect to the Levi account.
Other "accounts" upon which plaintiff claims commissions are due are not evidenced by a single written document, but are to be found in letters exchanged by Baum and Novoson.
Sometime around 1960, plaintiff procured an account for the defendant with Campus Sweater and Sportswear Company ("Campus"). The credible evidence is that the Campus account was on the exact same basis, except for the amount of the commissions, as the McGregor and Levi accounts. By letter dated September 21, 1960, Novoson stated to Baum that there was no question that plaintiff had procured the Campus account and was entitled to commissions on the account.
The evidence showed that defendant did pay commissions to plaintiff on the Campus account. From the many letters exchanged by Baum and Novoson, the amount of the commission on the Campus account is shown to have been thirty cents (30¢) per dozen originally, and latter, by mutual consent, was reduced to twenty cents (20¢) per dozen.
Sometime around 1962, defendant acquired another account, the Comus Manufacturing Co., Inc. ("Comus"), and there is much dispute about whether or not plaintiff procured the account, and how much, if any, commission was due plaintiff on that account.
The credible testimony, and examination of all of the writings between Baum and Novoson convince this Court that Baum procured the Comus account on the same basis, except for the amount of the commission, as the McGregor and Levi accounts. The evidence reveals that a great deal of discussion and disagreement preceded the formation of the contract. However, the Court finds that an agreement between the parties was reached in which all elements of a contract were present, including the amount of the commission to be paid plaintiff, which was originally twenty-five cents (25¢) per dozen. By mutual agreement, the amount of the commission on the Comus account was reduced to twenty cents (20¢) per dozen in May, 1963.
Up to August 13, 1963, the defendant actually made payments to plaintiff with respect to the above-noted commissions on the McGregor, Campus and Comus accounts.
In a letter dated August 13, 1963, to plaintiff, the defendant stated that defendant was terminating the rights of plaintiff to commissions on the McGregor, Campus and Comus accounts, and stated that with respect to future orders, defendant would guarantee to plaintiff $12,000.00 per year for the next five years. Plaintiff did not agree to defendant's "termination" or the accompanying $60,000.00 arrangement.
Also in August, 1963, the defendant was negotiating with Miller Bros. Industries, Inc., concerning arrangements whereby a plant of defendant's in Wrightsville, Georgia, would devote its entire production to the Comus business of Miller Bros. Industries, Inc.. In November, 1963, Comus Mfg. Co., Inc. was dissolved and its business was carried on by a Comus division of Miller Bros. Industries, Inc.
In March, 1964, defendant entered into a written agreement with Miller Bros. Industries, Inc. for production of trousers. That contract contained provisions for a long term, prices for the future, and minimum and maximum production, among other things. In December, 1968, Miller Brothers Industries, Inc. purchased all of the capital stock of Comus Mfg. Co. Inc.
The last sale by defendant to McGregor was on June 10, 1964; the last sale by defendant to Campus was July 9, *1161 1966; and the last sale with respect to Comus (or Comus division of Miller Bros. Industries, Inc.) was April 17, 1971.
Plaintiff claims commissions as follows: McGregor account  4,511 4/12 dozens of trousers at 60¢ per dozen; Campus account  50,216 10/12 dozens of trousers at 20¢ per dozen; Comus account, including Comus division of Miller Bros. Industries, Inc.  209,0333/12 dozens of trousers at 20¢ per dozen.
Plaintiff's position is that defendant (on August 13, 1963) may have terminated plaintiff's right to procure additional customer accounts for defendant, but that on accounts procured prior to August 13, 1963, plaintiff is entitled to commissions on all contracts, orders, or reorders procured by either plaintiff or defendant arising out of the initial procurement by plaintiff. However, plaintiff has "stipulated" that it does not and will not claim commissions on any sales that defendant may make with respect to McGregor, Campus and Comus accounts after April of 1971.
The parties have stipulated and the Court finds that Missouri law governs the transactions herein.
Three issues arise from the above facts: 1) Whether the McGregor, Campus and Comus agreements between plaintiff and defendant were terminable at the will of either party, and, if not, 2) whether this action is barred by the applicable statute of limitations, and if not, 3) whether the account of Miller Bros. Industries, Inc. (Comus division) is includable in plaintiff's claim under the contract.
The Court resolves the initial issue of whether or not the contracts between plaintiff and defendant were terminable at the will of either party in favor of the plaintiff. Plaintiff was not an employee of the defendant, but an independent agent who procured substantial accounts for defendant pursuant to the terms of the contracts between them. Defendant accepted fully the benefits of the accounts procured by plaintiff and continued to accept the benefits after August 13, 1963.
There is no dispute that defendant, upon reasonable notice, had the right to terminate plaintiff's status as defendant's representative in procuring additional accounts. That right to terminate is not involved here. The question is whether defendant could terminate plaintiff's right to future commissions on the past accounts that plaintiff procured for defendant.
In the case of Entis v. Atlantic Wire Cable Corporation, 335 F.2d 759, 762 (2nd Cir. 1964), the court noted the distinction between employee commission agreements and commission agreements with independent agents:
"The cases relied on by Entis are distinguishable in several respects. With but one or two exceptions, they involved not the employment of a sales representative but rather an offer by a business to pay commissions to an independent agent if he succeeded in bringing into the business's clientele a potentially large customer over whom the agent had some influence. In such cases it is generally not anticipated that the independent agent will continue to solicit the customer after bringing him in or render any other services; from that point on, the success of future relationship with the customer rests solely with the principal. Since it would be quite unreasonable to limit the agent to commissions on the initial order, the offer can well be construed, in the absence of any other sensible stopping point, as promising the agent commissions on all business resulting from the initial contact."
The right to terminate such contracts "at will" was discussed in the case, Zupan v. Blumberg, 2 N.Y.2d 547, 161 N. Y.S.2d 428, 141 N.E.2d 819 (N.Y.App.):
"* * * the contract was, on plaintiff's part, to procure accounts and  on defendants' part  to pay to plaintiff a percentage for so long as business from those accounts was forthcoming. *1162 It was within the contemplation of the parties to the contract that the customer might give orders for years, as actually occurred. Indeed, plaintiff is here suing for commissions based on orders accepted several years after this contract is claimed to have been made.
* * * * * *
The testimony of defendant Blumberg that the employment was "at will" can hardly mean that, once plaintiff procured an account for defendants, they might immediately terminate plaintiff's employment, retain the customer and collect their fees. It can only mean that defendants might cease at any time to employ plaintiff to procure further accounts for them and, similarly, that plaintiff might decide to quit defendants' employ. But, as long as they handle the Tifford account, defendants would be obligated to pay commissions to plaintiff." (Emphasis supplied)
The testimony presented and the many exhibits in this case, viewed as a whole, convince this Court that the plaintiff and defendant contemplated and intended that plaintiff would receive commissions on all contracts, orders and reorders on accounts procured by plaintiff for defendant. The record indicates that plaintiff often provided valuable continuing services in connection with accounts procured for defendant. Indisputably, the defendant accepted the benefits of all of plaintiff's efforts.
It is the opinion of the Court that the credible evidence and basic principles of fair play prevent defendant from avoiding its obligation to pay the agreed-upon commission to plaintiff on all contracts, orders and re-orders with respect to the McGregor, Campus and Comus accounts procured by plaintiff prior to August 13, 1963.
Defendant contends that this action is barred by the applicable Missouri five-year statute of limitations, Section 516.120 V.A.M.S., on the basis that plaintiff's cause of action accrued on August 13, 1963, and this suit was commenced in April, 1970. Plaintiff seeks to avoid the limitations bar by relying on Section 516.100 V.A.M.S. which provides:
"Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."
On August 13, 1963, defendant had no right to terminate plaintiff's rights to future commissions, and defendant's "termination" letter of that date constituted the technical breach of contract. On that date, however, plaintiff's damages were not ascertainable. Injury occurred at each time in the future that an order was filled by defendant for an account previously procured by plaintiff and the defendant failed to pay plaintiff the agreed upon commission with respect to that order.
In Rippe v. Sutter, 292 S.W.2d 86, 91 (1956), the Missouri Supreme Court addressed the relationship of Section 516.100 to Section 516.120:
Section 516.100 provides in part that for the purposes of applying the provisions of Section 516.120 "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of * * * duty occurs, but when the damage * * * therefrom is sustained and is capable of ascertainment * * *." The general rule, however, is that a statute of limitations begins to run when the cause of action accrues, and that "accrual" occurs at the time when a breach of duty has occurred or wrong *1163 sustained as will give the right to the injured party to bring and maintain an action. The aforequoted statute does not change the general rule that "when an injury is complete as a legal injury at the time of the act, the period of limitation will at once commence; [and] if the action is of a nature to be maintained without proof of actual damage, the period of limitation will begin to run from the time the act is done without regard to any actual damage, * * * but * * * when the act which gives the cause of action is not legally injurious until certain consequences occur, then the period of limitation will take date from the consequential injury. * * * the injurious consequences or resulting damages which bring about the accrual of the cause of action are the indispensable elements of the injury itself, and not mere aggravating circumstances enhancing a legal injury already inflicted, * * * and * * * the resulting damage is sustained and is capable of ascertainment within the contemplation of the statute whenever it is such that it can be discovered or made known." Allison v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 771, 773.
In the instant case, the defendant's breach of contract on August 13, 1963, gave the cause of action, but did not become legally injurious until defendant failed to pay commissions due plaintiff on orders filled after August 13, 1963, on the accounts in controversy. Each time that the defendant filled an order and failed to pay the commission due plaintiff, the damages became ascertainable and the legal injury was complete; plaintiff could have maintained an action based thereon to a successful conclusion. The limitations period commenced at the point in time at which the legal injury was complete.
The Court concludes that the statute of limitations does not bar this action insofar as plaintiff seeks to recover commissions due and owing within five years prior to April 2, 1970, that is, from and after April 2, 1965. All payments which were due prior to April 2, 1965, are barred by the statute of limitations.
The evidence is that the last sale by defendant to McGregor was on June 10, 1964. Plaintiff's claims for commissions based on defendant's sales to McGregor are barred. The last sale by defendant to Campus was July 9, 1966. Plaintiff is entitled to recover commissions only on defendant's sales to Campus between April 2, 1965, and July 9, 1966, at the rate of 20 cents (20¢) per dozen.
The remaining issue for determination is whether or not the account of Miller Brothers Industries, Inc. (Comus division) is includable in plaintiff's claim for relief. For purposes of this lawsuit, the Court finds that it is includable. The credible evidence reveals that plaintiff procured the Comus account for defendant. In 1963, the defendant began negotiating with Miller Brothers about a "deal" for defendant to devote one of its entire plants to production for the Comus business. As the negotiations matured, defendant "terminated" all of plaintiff's rights with respect to the Comus account. Within a few months, Comus began operating as a division of Miller Brothers and the defendant succeeded in getting the new extended contract for production of Comus trousers.
It is the opinion of the Court that after plaintiff procured the Comus account, and because of it, the defendant saw an opportunity to enlarge and extend its Comus production in the "deal" with Miller Brothers, and that defendant then attempted to deprive plaintiff of future commissions on the extended Comus account by "terminating" the agreement just prior to effecting the arrangements with Miller Brothers.
The evidence clearly shows that the defendant's production for Comus, as a division of Miller Brothers, was a direct result of plaintiff's initial procurement of the Comus account for defendant. *1164 The close relationship of plaintiff with Comus benefitted defendant again in October of 1963 when Comus was complaining about the quality of defendant's production. Defendant asked Baum to smooth over the complaints, and correspondence presented to the Court indicates that Baum did attempt to straighten things out. Apparently, he was successful since the defendant and Miller Brothers subsequently entered into an extended contract for production of Comus trousers.
The Court concludes that plaintiff is entitled to commissions on defendant's sales to Comus division of Miller Brothers from and after April 2, 1965, at the rate of 20 cents (20¢) per dozen.
The Court concludes that plaintiff is entitled to damages based only upon defendant's sales with respect to the Campus and Comus accounts from and after April 2, 1965, at the rate of 20 cents (20¢) per dozen, plus interest from the date of judgment. The amount of the judgment is a matter of computation. The parties will be given fifteen days within which to compute the total amount and judgment will be entered accordingly.