**COLLINS & AIKMAN FLOOR COVER-INGS CORPORATION, f/k/a Collins & Aikman Corporation, Petitioner,**

v.

**Robert FROEHLICH, Respondent.**

**Robert FROEHLICH, Petitioner,**

v.

**COLLINS & AIKMAN CORPORATION, Respondent.**

**Nos. 89 Civ. 7403 (RWS), 89 Civ. 7404 (RWS).**

United States District Court,
S.D. New York.

April 12, 1990.

**481**

moved for the confirmation of the Award. For the reasons set forth below, the Award is vacated and a rehearing is directed.

*The Parties and the Agreement*

C & A is a Delaware corporation with an office and its principal place of business in Dalton, Georgia. It is in the business of, among other things, manufacturing commercial flooring and carpeting. Froehlich is a New York resident who entered into an employment agreement with C & A dated October 22, 1979. The Agreement set out the parties "understanding" as to Froehlich's "engaging in commission sales activities on behalf of C & A" and provided in pertinent part:

(a) Froehlich can sell the C & A products described in Schedule "A" of the Agreement to "customers" and in the "territory described in Schedule B" at a commission rate of "7½%".

(b) Changes in the schedules concerning C & A products, customers, territory and compensation could only be modified "either upon individual written notice to [Froehlich] or by promulgating such change in a publication generally distributed or made available to sales personnel carrying on sales efforts in [Froehlich's] general field." (¶ 4).

(c) The Agreement was to continue indefinitely subject to termination: (i) by Froehlich immediately upon the giving of written notice to such effect to C & A; and (ii) by C & A by giving written notice of termination "to become effective at such time (not less than thirty days from the giving of such notice) as may be specified and noticed." (¶ 7).

(d) In the event of termination of this agreement: unless otherwise specifically provided in Schedule C, commissions shall be due only with respect to C & A products which are shipped to the customer prior to the effective date of termination as provided in ¶ 7 of this agreement (and only if such C & A products are subsequently fully paid for by the customer). (¶ 5(b)).

(e) This agreement constitutes the entire agreement of the parties with respect to your [Froehlich's] promotion of the sale

Otterbourg, Steindler, Houston & Rosen, P.C. by Bernard Beitel, Terri L. Rudd, of counsel, New York City, for Collins & Aikman.

Webster & Sheffield by Richard A. Mescon, Sandra E. Langs, Valerie J. Watnick, of counsel, New York City, for Robert Froehlich.

OPINION

SWEET, District Judge.

Collins & Aikman Floor Coverings Corporation, f/k/a Collins & Aikman Corporation ("C & A") seeks by petition pursuant to 9 U.S.C. § 10 to vacate an arbitration award directing it to pay Robert Froehlich ("Froehlich") the sum of $152,643.52 for the alleged breach of an employment agreement between C & A and Froehlich dated October 22, 1979 (the "Agreement") and to reimburse Froehlich for the administrative fees he advanced to the American Arbitration Association ("AAA") in the sum of $4,394.62. Froehlich has cross-

of C & A products and may be changed only by an instrument in writing executed by both parties. (¶ 8(c)).

The Agreement provided for resolution of any "claim or controversy" by arbitration in accordance with the rules of the AAA and also provided in ¶ 8(d) that:

The arbitrator sitting in any such controversy shall have no power to alter or modify any express provision of this agreement or to render any award which by its terms effects any such alteration or modification.

Finally, paragraph 8(f) of the Agreement specifically states:

This agreement shall be governed by and construed in accordance with the laws of the State of New York.

On February 19, 1986, C & A notified Froehlich that his employment with C & A was terminated effective March 21, 1986 and paid him all the commissions due him for C & A products which were shipped to his accounts as determined by C & A prior to the termination date.

*Prior Proceedings*

In August 1986, Froehlich commenced an arbitration proceeding against C & A before the AAA in New York City pursuant to the arbitration clause in the Agreement. Diana Long Nicholson, Esq. (the "Arbitrator") was appointed.

The initial hearings in this matter took place on February 24, 1987. The record of sales (consisting of copies of invoices produced by C & A at the initial hearing and computerized statements) reflected the following:

(a) Sales made prior to March 21, 1986, Froehlich's effective termination date.

(i) Aetna—all commissions on sales made prior to termination were admittedly paid to Froehlich;

(ii) GTE—all commissions on sales made prior to termination were admittedly paid to Froehlich; and

(iii) Cigna—sales of $118,092.53, (if commissionable the amount would be $8,856.94).

(b) Sales made from March 22, 1986 to August 15, 1986, the date of the demand for arbitration.

(i) Aetna—sales of $36,461,52 (if commissionable, the amount would be $2,734.61).

(ii) GTE—sales of $26,520.84 (if commissionable, the amount would be $1,989.06).

(iii) Cigna—sales of $203,720.21 (if commissionable, the amount would be $15,279.01).

(c) Sales made from August 16, 1986 through February 24, 1987, the first date of the hearing.

(i) Aetna—sales of $10,001.62 (if commissionable, the amount would be $750.12);

(ii) GTE—sales of $135.42 (if commissionable, the amount would be $10.15); and

(iii) Cigna—sales of $96,645.75 (if commissionable, the amount would be $7,248.43).

C & A disputed whether or not the Cigna account was assigned to Froehlich or was a house account on which no commissions were due.

According to Cigna records up to the date of the first hearing, February 24, 1987 (which was eleven months after the effective date of termination of employment), damages including the Cigna account would have been $36,868.32.

Hearings were scheduled to resume on April 22 and April 23, 1987, were adjourned to November 23 and November 24, 1987, and again to February 24, 1989, due largely to the Arbitrator's unavailability.

At the second hearing, Froehlich submitted a worksheet with a damage calculation of $1,397,850 based not on any specific transaction or sale but upon his understanding he would be employed by C & A until he decided to retire and his wrongful discharge. Assuming a six-year period of additional employment, Froehlich calculated that he was entitled to $420,000 worth of commissions and $977,850 for Cigna commissions over the same six year period.

C & A then presented witnesses who testified as to the policies of C & A and its total sales records on Froehlich's account which through the date of Froehlich's discharge totalled $118,092.53 with an additional $300,365.96 in sales occurring through the date of the first hearing.

After the hearings concluded, the parties simultaneously exchanged post-hearing briefs and reply briefs on May 12, 1989 and June 9, 1989. Closing arguments took place before the Arbitrator on June 16, 1989. Froehlich urged that he was seeking to recover sales commissions owed to him from the period both prior to his termination (which at most amounted to $8,856.94 on sales to Cigna) and commissions on sales for a reasonable time thereafter.

The Administrative Fee Schedule of the AAA set out in the Commercial Arbitration Rules in effect in August 1986 when this arbitration was commenced provided:

| Amount of Claim | Fee |
|---|---|
| X X X | X X X |
| $160,000 to $5,000,000 | $1,800 plus ¼% of excess over $160,000 |

The administrative fee charged by the AAA to Froehlich was $4,894.62 on a claim of $1,397,850.

The Froehlich post-hearing memorandum stated his claim as follows:

According to Respondent's sales invoices, Froehlich is entitled to $4,750.23 as his commission on sales made to Aetna from January, 1986 through January, 1987. He is also entitled to $6,288.17 as commissions on sales to GTE during the period from January, 1986 until the present [March, 1989]. In addition, Robert Froehlich is entitled to commission on a one million dollar sale [claimed to have been made in 1988] of commercial carpet which Respondent made to GTE for GTE's Stamford, Connecticut headquarters. Finally, Froehlich is entitled to $30,826.35 as his commission on sales to Cigna from August, 1985 through the present [March, 1989].

No records were adduced with respect to the alleged GTE sale in 1988.

The Arbitrator issued an award on August 8, 1989 (the "Award") which stated that:

1. Within thirty (30) days from the date of transmittal of this Award to the parties, Collins & Aikman Corporation hereinafter referred to as Respondent shall pay to Robert Froehlich, hereinafter referred to as Claimant the sum of One Hundred and Fifty Two Thousand Six Hundred and Forty Three Dollars and Fifty Two Cents ($152,643.52), which includes interest.

\* \* \* \* \* \*

3. The administrative fee of the American Arbitration Association totalling Four Thousand and Eight Hundred and Ninety Four Dollars and Sixty Two Cents ($4,894.62), shall be borne by Respondent in the sum of Four Thousand Three Hundred and Ninety Four Dollars and Sixty Two Cents ($4,394.62).

The Award also stated:

ROBERT FROEHLICH, during the hearing held on February 24, 1989, having disclosed the dollar amount of his previously undetermined claims and COLLINS & AIKMAN CORPORATION having raised no objection to such disclosed claim,....

By letters dated August 17, 1989, C & A requested that the AAA submit to the Arbitrator a letter requesting an explanation as to how she calculated the Award since it was mathematically incapable of being determined based upon the evidence presented at trial. Froehlich, by letter dated August 31, 1989, opposed that application.

By letter dated September 28, 1989, the AAA transmitted to the parties the Arbitrator's Disposition of Application for Modification of the Award of Arbitrator which was dated September 21, 1989. In that Disposition, the Arbitrator determined as follows:

1. The application for modification of the Award executed on August 8, 1989 is hereby denied; and

2. My prior award executed on August 8, 1989 is hereby reaffirmed in all respects.

On October 30, 1989, Froehlich filed an application in the Supreme Court of the State of New York, County of New York (the "State Action") to confirm the arbitration award. Thereafter, on November 6, 1989, C & A filed a Notice of Removal and a Petition in this court to vacate the award (the "Federal Action").

Argument was had on the petition and the cross-motion on December 1, 1989, and the matter was considered fully submitted at that time.

## The Arbitrator Exceeded Her Powers Set Forth In the Agreement

 In this case, in order to arrive at the amount of commissions awarded to Froehlich of $152,643.52, commensurate sales would have had to approximate $2 million. The only sales made through the date of Froehlich's termination for which he did not receive compensation were those sales made to Cigna which would have, at most, amounted to $8,856.94.

Indeed, if the Arbitrator gave Froehlich credit for all possible sales to Aetna, GTE, and Cigna through the date of the first day of the arbitration, it would have amounted to, at most, $36,868.32 and if the Arbitrator decided to award Froehlich commissions on all documented sales made to Aetna, GTE, and Cigna through the last day of hearings, it would have resulted in commissions, at a rate of $7.5%, of $48,920.27. There was also a reference by Froehlich in his post-hearing brief that he had heard of an alleged one million dollar sale to GTE "which was completed in 1988," as to which no other evidence was adduced. There is therefore no basis on which the Award could have been reached except to consider post-termination charges.

The Award therefore exceeded the limitations of liability fixed in paragraphs "5(b)" an "7" of the Agreement. Under those provisions, no commissions for sales made to Froehlich's accounts were to be awarded subsequent to the effective date of his termination. The Agreement in paragraph 8(d) also provided:

> the arbitrator sitting in any such controversy shall have no power to alter or modify any express provision of this agreement or to render any award by which its terms effects any such alteration or modification....

The amount of the Award establishes that the Arbitrator exceeded her authority by taking into account not only sales made by C & A subsequent to March 21, 1986, the effective date of Froehlich's termination, but sales made at a later date or on the basis of the continuation of the compensation of Froehlich on the basis of his prior earnings for some period following his termination.

In *Lentine v. Fundaro,* 29 N.Y.2d 382, 328 N.Y.S.2d 418, 278 N.E.2d 633 (1972), Chief Judge Breitel, commenting upon CPLR 7511, the New York statute analogous to the Federal Arbitration Act, 9 U.S.C. § 10, stated:

> An Award may be vacated under CPLR 7511, it has been stated or held, where the construction of a document is "completely irrational" (*Matter of National Cash Register Co. [Wilson], supra,* 8 N.Y.2d [377] at p. 383, 208 N.Y.S.2d [951 at p. 955, 171 N.E.2d 302], at p. 305 [(1960)]), or where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration (*Matter of Granite Worsted Mills* [Cowen], *supra,* 25 N.Y.2d [451] at pp. 456–457, 306 N.Y. S.2d [934] at pp. 938–939, 255 N.E.2d pp. 170–171).

*Fundaro,* 29 N.Y.2d at 385–86, 328 N.Y. S.2d at 442, 278 N.E.2d at 657.

A review of the Agreement establishes that none of its provisions are unclear, ambiguous or otherwise requires construction or interpretation, and Froehlich has never contended otherwise.

An arbitrator cannot re-write a new agreement for the parties. *Torrington Co. v. Metal Prod. Workers Union Local 1645,* 362 F.2d 677, 682 (2d Cir.1966). There is no provision of the Agreement which permitted the Arbitrator to render an Award which encompassed commissions on sales made to Froehlich's accounts for a "reasonable period of time" after discharge. Therefore, the Arbitrator exceeded the powers set forth in the Agreement.

### The Award Was Based on a Mistake of Law

■ Since the Arbitrator exceeded the limits of the Agreement in making the Award, as set forth above, the relief granted was apparently in response to the argument advanced by Froehlich during the arbitration, namely that he was entitled to relief on the theory that there was an implied duty of good faith which was breached by C & A when it terminated Froehlich in order to cut off the commissions to which he would otherwise have been entitled. Two authorities had been cited to the Arbitrator for this proposition, *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir.1985) and *Baum Assoc. Inc. v. Society Brand Hat Co.*, 340 F.Supp. 1158 (E.D. Mo.1972), *aff'd*, 477 F.2d 255 (8th Cir.1973).

In *Wakefield* the plaintiff salesperson advanced the theory of an implied covenant of good faith, breached he maintained by the defendant's termination of his employment contract in order to avoid paying him commissions on sales that had been completed but for the formalities. Froehlich urges that this situation had been established in the evidence submitted to the Arbitrator here. C & A here, as did the defendant in *Wakefield*, noted the New York authorities with respect to contracts at will, in particular, *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). In *Wakefield*, a diversity case arising in New Jersey, the court noted the identity between New York and New Jersey law on the subject at issue and then proceeded to affirm the judgment below which had granted the relief requested. *Zilg v. Prentice–Hall, Inc.*, 717 F.2d 671 (2d Cir.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984), was cited for the proposition that implied contractual obligations may coexist with express provisions which appear to negate them, a conclusion previously reached by the court in the publishing context. No other New York authority was referred to in *Wakefield*.

However, on December 14, 1989, the New York Court of Appeals decided *Gallagher v. Lambert*, 74 N.Y.2d 562, 549 N.Y. S.2d 945, 549 N.E.2d 136 (1989), in which the majority rejected the dissent's reliance on *Wakefield* for the proposition that there is a covenant of good faith which gives rise to obligations surviving the termination of an employment relationship. In *Gallagher*, the plaintiff was an employee at-will and a minority stockholder in the defendant close corporation with which he was employed. 549 N.Y.S.2d at 945, 549 N.E.2d 136. The purchase of Gallagher's stock was subject to a mandatory buy-back provision: if his employment ended for any reason before January 31, 1985, at book value the stock would return to the corporation. *Id.* at 946, 549 N.E.2d at 137. The defendant corporation fired Gallagher just prior to the trigger date, after which the buy-back price would have been higher. *Id.* Gallagher sought the higher repurchase price based on an alleged breach of a fiduciary duty of good faith and fair dealing. *Id.*

In rejecting plaintiff's arguments and in finding no cognizable breach of any fiduciary duty owed to plaintiff under the plain terms of the parties' repurchase agreement, the New York Court of Appeals in *Gallagher* stated as follows:

> The buy-back price formula was designed for the benefit of both parties precisely so that they could know their respective rights on certain dates and avoid costly and lengthy litigation on the "fair value" issue. (*See, Coleman v. Taub*, 638 F.2d 628, 637). Permitting these causes to survive would open the door to litigation on both the value of the stock and the date of termination, and hinder the employer from fulfilling its contractual rights under the agreement. This would frustrate the agreement and would be disruptive of the settled principles governing like agreements whereby parties contract between themselves in advance so that there may be reliance, predictability and definitiveness between themselves on such matters. There being no dispute that the employer had the unfettered discretion to fire plaintiff at any time, we should not redefine the precise measuring device and scope of the agree-

ment. Defendant agreed to abide by these terms and thus fulfilled its fiduciary duty in that respect.

*Id.* at 947, 549 N.E.2d at 138.

Under the Agreement, New York law is applicable. The standard enunciated in *Gallagher* is the latest reiteration of New York's view of basic contract principles in an employment at-will context. The stockholder status of the plaintiff in *Gallagher* seems equally applicable in New York to the simpler employer-employee relationship. The Court in *Gallagher* reiterated the applicability of the employment at-will rule and reconfirmed that a departure from the clear and unambiguous written agreement between parties is not permissible. *Id.* Reliance upon *Wakefield* turned out to be in error under New York law.

In the affidavit submitted here by Froehlich it is noted that *Baum Assoc. Inc. v. Society Brand Hat Co.,* 340 F.Supp. 1158 (E.D.Mo.1972), *aff'd,* 477 F.2d 255 (8th Cir. 1973) was also submitted to the Arbitrator on behalf of Froehlich. *Baum* involved a written arrangement to pay commissions to an independent agent for procuring "contracts, orders or reorders" from designated accounts. *Id.* at 1159. The Court was faced with a claim for ongoing commissions for procuring another account. *Id.* at 1160. The Court stated that the agency agreement was terminable at will, and held:

> The testimony presented and the many exhibits in this case, viewed as a whole, convince this Court that the plaintiff and defendant contemplated and intended that plaintiff would receive commissions on all contracts, orders and reorders on accounts procured by plaintiff for defendant.

*Id.* at 1162.

In other words, *Baum* turned on a contract interpretation, not available here, rather than a cause of action based upon an implied duty. *See id.* Reliance on *Baum,* if such there was, was a mistake of law as well.

No other authorities on this subject have been presented by Froehlich, and therefore reliance upon an implied duty in an at will contract was a mistake of law.

*The Mistake of the Arbitrator Was Not Manifest Error*

■ As indicated above, the Arbitrator exceeded her authority and in applying New York law made a mistake of law. This mistake was not, however, manifest error requiring the vacating of the Award.

The limited standard of review in this court means that if the findings and conclusions of the Arbitrator are "barely colorable," the award should be upheld. *Kamakazi Music Corp. v. Robbins Music Corp.,* 534 F.Supp. 57, 61 (S.D.N.Y.1981); *see I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 430–31 (2d Cir.1974) (confirming award that was clearly erroneous in logic and result); *Rochester City School Dist. v. Rochester Teachers Ass'n,* 41 N.Y.2d 578, 582, 394 N.Y.S.2d 179, 182, 362 N.E.2d 977, 980 (1977) (citation omitted) (court will uphold award unless it is completely irrational). The Second Circuit has similarly made clear that where the award has even "colorable justification," litigants cannot avoid confirmation by merely arguing, as respondent does here, for a different result. *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir.1978).

Courts have consistently held that manifest disregard of the law requires something more than misinterpretation of the law. *Fried Krupp, GmBH Krupp Reederei Und Brennstoff–Handel–Seeschiffarht v. Solidarity Carriers, Inc.,* 674 F.Supp. 1022, 1026 (S.D.N.Y.1987), *aff'd,* 838 F.2d 1202 (2d Cir.1987) (party moving to vacate must show that arbitrators deliberately disregarded what they knew to be the law); *Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985) (party seeking vacatur must show that arbitrator ignored relevant law); *Office of Supply, Gov't of Republic of Korea v. N.Y. Navigation Co., Inc.,* 469 F.2d 377, 379 (2d Cir.1972) (award will not be set aside for mere error in interpretation of law); *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972) (arbitration award will not be vacated for misinterpretation of law); *Refino v. Feuer Transp., Inc.,* 480 F.Supp. 562, 567 (S.D.N.Y.1979), *aff'd,* 633

F.2d 205 (1980) (award will not be vacated for mere mistake of law); *Dan River, Inc. v. Cal–Togs, Inc.*, 451 F.Supp. 497, 505 (S.D.N.Y.1978) (requiring evidence of deliberate disregard of relevant law to overturn arbitrator's award).

■ "Manifest disregard" of applicable law as a ground for upsetting an arbitration award requires an Arbitrator to correctly state the law and thereafter, announce his or her intent to ignore it. *Trans–Asiatic Oil Ltd. S.A., M/V Silver Lady v. UCO Marine Int'l Ltd.*, 618 F.Supp. 132, 135 (S.D.N.Y.1985) (petition to confirm granted absent a showing that arbitrator deliberately ignored law).

Here, the Arbitrator misapplied, rather than ignored the applicable law for the reasons set forth above. C & A has relied upon *American Postal Workers Union v. U.S. Postal Serv.*, 682 F.2d 1280 (9th Cir. 1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983) on this subject. *American Postal Workers*, however, was a case where the Arbitrator's award directed the performance of an illegal act, a circumstance not present here. The Ninth Circuit, in vacating the award, noted that more stringent review will be afforded to awards which sanction illegal conduct as compared to awards resolving disputes between private litigants, such as an employer and employee:

> [I]n most cases, courts must defer to an arbitrator's conclusions even where they are erroneous. These cases involve conclusions of law with respect to such issues as contract interpretation, ... and damages for breach [of contract].

Therefore, even though the Arbitrator erred, that error was not manifest, certainly at the time.

*The Award Was Imperfectly Executed*

■ Assuming that the Arbitrator acted upon a theory now determined to have been in error though not an error that was manifest in terms of the authorities cited above, the Award was imperfectly executed.

Although an arbitrator has broad authority to fashion an award, such authority is not without limits. As has been codified in 9 U.S.C. § 10(d), an arbitration award shall be vacated where:

> the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Under the theory that it has been presumed that the Arbitrator was acting, it was necessary to determine some reasonable period during which it was appropriate for the challenged commissions to be paid. Further, of course, there was no determination as to which of the accounts were those where commissions were appropriate. In addition, the period of the Award is not defined, nor is the amount of the interest applied. Under these circumstances the Award was so imperfectly executed that it cannot be reviewed.

Although arbitrators are under no obligation to give reasons for their decision, *Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir.1978), when the proof submitted at the hearing does not support the award, it should be set aside. *See, e.g., Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979) (award vacated where arbitration panel awarded unrequested amount of damages three times larger than any item claimed). Awarding damages in the sum of $152,643.52, an amount not subject to calculation, is irrational under the provisions of 9 U.S.C. § 10(d).

*Conclusions*

Under the circumstances here the Court has the power to remand the Award to the Arbitrator for clarification. *See Bell Aerospace Co. v. Local 516, Int'l Union*, 500 F.2d 921, 924 (2d Cir.1974); *see, e.g., New York Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 10 (2d Cir.1988) (since award does not make clear whether Company must pay operators, remand to arbitrators for clarification required); *Paperhandlers Union No. 1 v. U.S. Trucking Corp.*, 441 F.Supp. 469, 474 (S.D.N.Y.1977) (subject of the remand order was clarification of an ambiguity within the award). However, "[r]emand should not be granted where the court can resolve any alleged ambiguities in the award by

modification, pursuant to 9 U.S.C. § 11." *Fischer v. CGA Computer Assoc., Inc.,* 612 F.Supp. 1038, 1041 (S.D.N.Y.1985).

Both the motion to vacate the Award and the cross motion to affirm it are denied; the proceeding is remanded for further arbitration and clarification in accordance with this opinion.

It is so ordered.