OPINION OF THE COURT
Edward J. Greenfield, J.
In this action alleging fraud by accountants, defendants *774 move for an order pursuant to CPLR 3211 (a) (1), (5) and (7), dismissing the amended complaint, or in the alternative, for an order pursuant to CPLR 3212, granting summary judgment.
This action was commenced by service of a summons and complaint on or about April 14, 1989. Plaintiff Joseph A. Ris is suing in his representative capacity as trustee in bankruptcy of the estate of Penvest, Inc. (Penvest), a pension investment management company which was in the business of investing pension and other fiduciary funds for the benefit of the investors. Defendant Finkle & Ross (F & R) is an accounting firm of which the individual defendants, Alvin Finkle (Finkle) and Edward Ross (Ross), both of whom are certified public accountants, are members.
The amended complaint alleges three causes of action. The first cause of action alleges that defendant accountants made fraudulent representations concerning the residual value of certain leases owned by its client (a nonparty), Etna Leasing Services, Ltd. (Etna), in connection with a $900,000 loan made by Penvest to Etna. The amended complaint alleges that the residual value of those leases in which Penvest invested was represented as being over $2 million in a financial statement and in oral representations made by defendant Ross, and that said financial statement and Ross’ oral representations contained omissions and were "false and misleading in that substantially all the residuary interest in the Leases held by Etna had been previously assigned”, and that the actual value thereof was not $2 million, and that defendants had withheld the fact that "the Statement was false and misleading with the intent to mislead and defraud Penvest and with the knowledge that the loans could and would never be repaid”.
In order to plead a prima facie case of fraud, plaintiff must allege that defendant made a representation of a material existing fact, falsity, scienter, deception and injury (Lanzi v Brooks, 54 AD2d 1057 [3d Dept 1976], affd 43 NY2d 778 [1977]). In addition, plaintiff has the burden of establishing justifiable reliance on the allegedly false representations (Arnold Constable Corp. v Chase Manhattan Mtge. & Realty Trust, 59 AD2d 666, 667 [1st Dept 1977]).
In support of their motion for summary judgment, defendants assert that the financial statement containing the representations upon which Penvest allegedly relied was a mere "compilation”, rather than a formal audited statement, and, *775 therefore, any reliance thereon by Penvest in extending loans to Etna could not have been justifiable.
In his moving affidavit defendant Ross, who is a C.P.A., explains the technical significance of a "compilation” from an accounting point of view according to the American Institute of Certified Public Accountants (AICPA), Generally Accepted Auditing Standards (GAAS), the AICPA’s Statement of Standards for Accounting and Review Services (SSARS), and Generally Accepted Accounting Principles (GAAP). He describes it as follows: "A compilation involves unaudited financial statements as to which there is not a verification and not even a limited review performed of the figures presented in the statements. In contrast, an audit involves independent verification of the financial statements of a business entity. The performance of that audit must be in accordance with generally accepted auditing standards (the acronym of which is GAAS); and the objective of that audit is the expression of an opinion by the accountant on the fairness with which the financial statements present the financial position, results of operations and changes in financial position in conformity with generally accepted accounting principles (the acronym for which is GAAP). These rules and the objective structuring in audit, which are necessary for proper independent verification of the financial information and for proper formulation of the auditor’s opinion on the financial statements as a whole, are not applicable and not relevant to the provision of the compilation.”
According to AICPA Statement on Standards for Accounting and Review Services (AR) § 100.04, a compilation of financial statements involves "[presenting in the form of financial statements information that is the representation of management (owners) without undertaking to express any assurance on the statements” (emphasis added). The accountant performing a compilation is not required to make inquiries or to perform other procedures to "verify, corroborate or review” information supplied by the business entity (AR §§ 100.11-100.12). In the absence of known irregularities, the accountant’s only duty in preparing a compilation is to "read the compiled financial statements and consider whether such financial statements appear to be appropriate in form and free from obvious material error” (AR § 100.13 [emphasis added]).
An accountant preparing a compilation is required to issue a report identifying the compilation as such (AR § 100.05) and must prepare a report explaining that the engagement is *776 simply a compilation, that it is limited to the presentation of financial statements that are the representation of management, and that the "financial statements have not been audited or reviewed and, accordingly, the accountant does not express an opinion or any other form of assurance on them” (AR § 100.14 [emphasis added]).
In this action, the compilation dated March 29, 1982, which was sent by the accounting firm F & R to Etna, and which allegedly was relied upon by Penvest in extending credit to Etna, satisfied these requirements. The cover letter accompanying the compilation states as follows:
"The accompanying balance sheet of Etna Leasing Services Ltd. as of June 30, 1981, and the related statement of income for the year then ended have been compiled by us.
"A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.
"Management has elected to omit substantially all of the disclosure required by generally accepted accounting principles. If the omitted disclosures were included in the financial statements, they might influence the user’s conclusions about the company’s financial position. Accordingly, these financial statements are not designed for those who are not informed about such matters.”
In view of the express language of the last paragraph, Penvest cannot have justifiably relied on any representations by F & R (and its members) on the financial condition of Etna. Moreover, in view of the express statement therein that the information contained in the financial statements "is the representation of management”, and that F & R and its members "do not express an opinion or any other form of assurance on them”, plaintiff cannot even demonstrate that the compilation was a representation of material existing fact made by F & R (and its members).
Accordingly, that branch of the motion seeking summary judgment dismissing the first cause of action of the amended complaint (fraud) is granted and it is dismissed.
The second cause of action alleges that defendants breached an alleged contract with Etna as to which Penvest was a third-party beneficiary by providing a misleading financial statement on Etna. In opposition to this motion, plaintiff *777 argues that an accountant is not immune from liability to a lender for negligence in reviewing a borrower’s financial statements and rendering an uncertified report (Iselin & Co. v Mann Judd Landau, 71 NY2d 420, 422-423 [1988]). As the Court of Appeals has held, an accountant may be liable to the lender on a theory of negligent preparation of a borrower’s financial statements and rendering a report therein, even an uncertified one, where, even though the engagement is pursuant to a contract entered into between the accountant and the borrower, there is "evidence of a relationship sufficiently approaching privity between the lender and the accountant” (71 NY2d, at 423, supra). In determining whether there is a bond " 'so close as to approach that of privity’ ”, the Court of Appeals has "spelled out the following criteria for liability: (1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant’s understanding of their reliance” (Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 425 [1989], citing Credit Alliance Corp. v Andersen & Co., 65 NY2d 536 [1985]).
In the case at bar, plaintiff has made a sufficient factual demonstration of defendants’ awareness that Penvest was going to use the financial statements for the purpose of loaning money to Etna and understood that Penvest was relying thereon. This satisfies the requirement of showing the functional equivalent of privity necessary for a malpractice action against an accountant. However, having cleared this hurdle, plaintiff has failed to overcome the obstacle of submitting evidentiary detail that the compilation financial statement was, in fact, negligently prepared. Conspicuous by its absence is any affidavit by an accountant or other similar expert sufficient to raise a triable issue as to whether defendants’ conduct departed from the level of care required of an accountant rendering a compilation in such circumstances (see, Spitzer v Ciprut, 80 AD2d 891 [2d Dept 1981], lv denied 54 NY2d 603 [1981]; Amendolare v Piontkowski, 118 AD2d 529 [2d Dept 1986]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). The conclusory affidavit by plaintiff’s attorney (who is not an accountant) stating what plaintiff "will prove”, and that "[attaching a compilation” cover letter does not absolve them of the liability they undertook on this particular transaction, and that "[i]t is beyond credibility” that this court will accept *778 defendant Ross’ statements; and that "Something had to have been said”; and that defendants “should not be allowed to use the technical language contained in a cover letter * * * they prepared to shield themselves from liability”, is more appropriate for a brief or for a summation before a jury. However, for purposes of a motion for summary judgment, it is insufficient and is of no probative value. Since plaintiff has failed to demonstrate the existence of any factual issues by submitting evidence of probative value, that branch of the motion seeking summary judgment dismissing the second cause of action is granted and it is dismissed.
The third cause of action in the amended complaint alleges that defendants made fraudulent representations to Penvest with respect to the financial condition of one Robert Agona, who is not a party to this action, and that in reliance on such representations, on or about August 1982, Penvest loaned Agona $300,000, upon which he defaulted. This cause of action fails to set forth the alleged representations with the requisite specificity required by CPLR 3016 (b) (Neiman v Felicie, Inc., 55 AD2d 521 [1st Dept 1976]). Accordingly, that branch of the motion seeking dismissal of the third cause of action for failure to state a cause of action (CPLR 3211 [a] [7]) is granted and it is dismissed.
To recapitulate, defendants’ motion is granted in its entirety and the complaint is dismissed.