■ JAMES E. NAYLOR, Appellant-Respondent, v CEAG ELEC-TRIC CORPORATION, Respondent-Appellant.—Harvey, J. ■

The parties to this action commenced their business relationship in October 1983 when they entered into a written agreement whereby plaintiff would be defendant's exclusive sales representative in upstate New York for the products defendant manufactured in Suffolk County. Pursuant to this contract, plaintiff was to solicit and forward orders for defendant and in return defendant was to pay plaintiff commissions up to 7%. The agreement also provided that it could only be modified by a written instrument signed by both parties and the agreement could be terminated by either party without cause upon 30 days' written notice. Thereafter, plaintiff allegedly became aware of a business opportunity concerning International Business Machines (hereinafter IBM). IBM was apparently seeking to produce a new computer product that could possibly use power supplies manufactured by, among others, defendant. In early September 1984, defendant's representative and plaintiff discussed the possibility of selling products to IBM that would be manufactured at defendant's plant in Germany. Plaintiff was informed that such an arrangement would mean lower commission rates to plaintiff than were set forth in the parties' current sales agreement.

Following this discussion, plaintiff received a letter from defendant dated September 7, 1984 which stated that defendant agreed to pay plaintiff a minimum 2% commission on any IBM orders within plaintiff's territory and included other particulars of the proposed employment. The letter also instructed plaintiff to sign both copies and return one copy to defendant. Thereafter, plaintiff forwarded a letter to defendant dated September 12, 1984 which stated that it was in response to defendant's other letter and that plaintiff had made several changes, including a demand for more particulars of plaintiff's territorial area and a request for higher compensation and a long-term contract. Defendant ultimately responded to this correspondence by letter dated October 20, 1984 which stated that defendant would be unable to offer any

long-term contractual agreement as plaintiff had proposed in his September 12, 1984 letter. Further, defendant stated that due to lack of sufficient business activity it was canceling its existing October 1983 sales contract pursuant to paragraph six of that agreement effective October 22, 1984.

Plaintiff's demand thereafter for commissions allegedly owed him by defendant proved unsuccessful. Plaintiff commenced this action alleging various causes of action against defendant based upon breach of contract, quantum meruit, fraud, wrongful discharge and breach of duty of good faith. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint and plaintiff cross-moved for partial summary judgment of the issue of liability. Supreme Court granted defendant's motion to the extent it dismissed all causes of action except one, and these cross appeals followed.

The crux of plaintiff's contentions is that two separate and distinct agreements are at issue here; the 1983 sales agreement and the contract allegedly formed by defendant's September 7, 1984 letter to him. Supreme Court found, however, that the September 7, 1984 letter to plaintiff was merely an offer or proposal to plaintiff to modify the existing October 1983 agreement and plaintiff's September 12, 1984 letter was a rejection and counteroffer. Therefore, no binding contract resulted. With this conclusion we agree. Defendant made its intent quite clear in its September 7, 1984 letter that the exclusive means of acceptance was for plaintiff to sign both copies of the letter and this did not occur (see, *Manning v Michaels,* 149 AD2d 897, 898-899; *Tebbutt v Niagara Mohawk Power Corp.,* 124 AD2d 266, 268). The parties had explicitly stated in their October 1983 agreement that modifications could only be made pursuant to a written instrument signed by both parties. Without mutuality of assent, no contract could be formed as a matter of law (see, *Tebbutt v Niagara Mohawk Power Corp., supra,* at 268).

With these facts in mind, it is our view that Supreme Court correctly dismissed five of plaintiff's six causes of action in the complaint. Because no contract rights were created by the 1984 letter, plaintiff's cause of action seeking commissions pursuant to that letter was properly dismissed. As for plaintiff's cause of action seeking the 2% commission proposed in the September 1984 letter based on the theory of quantum meruit, this claim was also correctly dismissed. In cases where an express contract exists and the parties' valid written contract clearly covers the disagreement, then a suing party

cannot seek recovery under the equitable quasi-contract theory *(see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 389). Here, the parties had an express contract under the 1983 agreement which clearly defined the parties' employment relationship and commission structure. Because the agreement was not rescinded, plaintiff could only recover damages pursuant to that contract *(see, supra).*

Additionally, plaintiff failed to offer anything more than bare allegations that he was owed commissions pursuant to the 1983 agreement and motions for summary judgment cannot be defeated by mere conjecture (CPLR 3212 [b]; *Shaw v Time-Life Records,* 38 NY2d 201, 207). Regarding plaintiff's cause of action for wrongful discharge, we note that the 1983 agreement clearly expressed that it may be terminated without cause by either party upon written notice. In the absence of an agreement establishing a fixed duration, plaintiff's employment was presumed to be at will *(Sabetay v Sterling Drug,* 69 NY2d 329, 333) and the presence of the termination clause in the agreement confirms the unavailability of any greater protection to plaintiff *(see, Ingle v Glamore Motor Sales,* 73 NY2d 183, 190).

Plaintiff's cause of action for fraud lacks merit because he did not state a claim for relief separate from his cause of action for breach of contract *(see, Manshul Constr. Corp. v City of New York,* 143 AD2d 333, 336; *see also, Brumbach v Rensselaer Polytechnic Inst.,* 126 AD2d 841, 843). Although plaintiff apparently makes no argument with respect to his sixth cause of action seeking a declaratory judgment that defendant was liable to plaintiff for future commissions based on sales contracts between defendant and IBM, we note that this claim was also properly dismissed because plaintiff offered no evidentiary proof on the motion. In any event, the claim lacked merit due to the fact that the September 7, 1984 letter did not constitute a modification to the 1983 agreement or was not a separate binding contract in its own right.

Next, we turn to defendant's argument that Supreme Court incorrectly failed to dismiss plaintiff's remaining cause of action in the complaint alleging a breach of an implied duty of good faith on defendant's part by terminating plaintiff in an attempt to avoid the payment of commissions justly owing to him. In our view, defendant's arguments have merit. The Court of Appeals has continuously held that when an employment is at will, there is no implied obligation of good faith and fair dealing *(Ingle v Glamore Motor Sales,* 73 NY2d 183, 188, *supra; Sabetay v Sterling Drug,* 69 NY2d 329, 335, *supra;*

*Murphy v American Home Prods. Corp.,* 58 NY2d 293, 304). Because the employer has the unfettered right to terminate an at-will employee at any time, an implied obligation of good faith and fair dealing would be inconsistent with the other terms of the contractual relationship *(Sabetay v Sterling Drug, supra; Murphy v American Home Prods. Corp., supra).* Plaintiff points out that the Second Circuit Court of Appeals has held that while an at-will employee who had entered into a contract with his or her employer regarding the payment of commissions may not recover for his or her termination per se, the commissions contract created rights distinct from the employment relationship such as obligations derived from the covenant of good faith implicit in the commission contract *(see, Wakefield v Northern Telecom,* 769 F2d 109, 112). However, this case is inapplicable to the situation at bar. Here, the contract at issue is the 1983 sales representation agreement which included within its provisions clauses relating to commissions and the expiration and termination of the agreement. No separate agreement relating to commissions was drafted. The 1983 agreement was clearly an employment agreement designed to create an at-will employment relationship and the provision describing the payment of commissions was just one provision within that contract. Consequently, it cannot be persuasively argued that the commissions clause created rights for plaintiff distinct from the employment relation and, accordingly, summary judgment on this cause of action in defendant's favor should have been granted.

The parties' remaining contentions have been examined and have been found to be unpersuasive.

Order modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for summary judgment dismissing plaintiff's fifth cause of action alleging breach of fair dealing in good faith; motion granted as to said cause of action and said cause of action is dismissed; and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Harvey, JJ., concur.