Christopher S. **KNUDSEN**, Plaintiff,

v.

**QUEBECOR PRINTING (U.S.A.) INC.**, Defendant.

**No. 91 Civ. 2257 (KMW).**

United States District Court, S.D. New York.

April 15, 1992.

Robert G. Gage, Jr., Gage & Finneran, New York City, for plaintiff.

Neal D. Haber, Moss & Boris, P.C., New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the second, third, fourth, and fifth counts of Plaintiff's complaint for failure to state a claim upon which relief can be granted under New York law. For the reasons stated below, the Court dismisses the fourth and fifth counts of Plaintiff's complaint but declines to dismiss the second and third counts.

## BACKGROUND

In March, 1989, Plaintiff was hired by the Maxwell Communications Corporation ("Maxwell") to serve as a sales representative in the New York City office. According to Plaintiff, he was informed by Maxwell that his sales commissions would be based on Schedule C of Maxwell's 1988 Sales Commission Plan (the "Plan") and he received a copy of the Plan. Complaint ¶ 7. In early 1990, when Defendant purchased Maxwell, Plaintiff was told that his compensation would continue to be based on the Plan. Complaint ¶ 9.

Plaintiff alleges that his supervisors at Defendant company "created a very difficult and hostile atmosphere within which he had to work." Complaint ¶ 10. Plaintiff further alleges that, in spite of this hostile work environment, he succeeded in attracting new accounts and increasing sales for existing accounts. Complaint ¶ 11. Plaintiff claims that these increased sales entitled him to at least $81,150 in commissions by the end of August, 1990. Complaint ¶¶ 12 & 14.

On August 27, 1990, "with substantial commissions due and owing," Defendant terminated Plaintiff. Complaint ¶ 15. Plaintiff alleges that Defendant "knowingly, willfully and maliciously" misrepresented the basis for Plaintiff's dismissal "in an attempt to avoid paying [Plaintiff] large sales commission bonuses." Complaint ¶ 38.

Plaintiff also alleges that shortly after his dismissal, his former supervisor used threats and intimidation in an attempt to coerce Plaintiff to sign a severance agreement which would have paid about $2,500 and thereby released Defendant from all further claims by Plaintiff. Complaint ¶ 15. After Plaintiff rejected this proposal, Plaintiff asserts that his former supervisor followed him to the company elevators "in an abusive manner." Complaint ¶ 15.

Shortly after his termination, Plaintiff wrote a letter to the Senior Vice President of Defendant Company, seeking clarification of the sales commissions owed to him by Defendant. Plaintiff alleges that the responding letter contained false and intentionally fraudulent reasons for Plaintiff's termination. Complaint ¶ 19. Plaintiff states that this fraudulent letter "shocked," "embarrassed and humiliated him," causing him "severe emotional distress" and "physical injury." Complaint ¶¶ 44 & 45.

Plaintiff subsequently sued Defendant for (1) breach of contract, (2) quantum meruit, (3) breach of a covenant of good faith and fair dealing, (4) fraud and misrepresentation, and (5) intentional infliction of emotional distress. On June 7, 1991, before answering the complaint, Defendant moved to dismiss the second, third, fourth, and fifth causes of action for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court dismisses the third, fourth, and fifth causes of action but declines to dismiss the second cause of action.

## DISCUSSION

On a motion to dismiss, a district court must accept as true the factual allegations made in the complaint. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991) (citations omitted). Furthermore, the complaint must be construed in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The function of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985), *citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984). A district court will not dismiss a complaint for failure to state a claim " 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686 (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

### *Plaintiff's Second Claim*

■ Defendant does not challenge the legal sufficiency of Plaintiff's first claim

for breach of contract. Plaintiff's second claim seeks to recover the reasonable value of his services under the doctrine of quantum meruit, or quasi contract. In the absence of express agreements, quasi contracts may be implied in law in the interest of preventing a party's unjust enrichment. *See Seiden Associates, Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37, 38–9 (S.D.N.Y. 1991), *citing Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987).

■ Defendant argues that, in light of Plaintiff's first claim for breach of contract, Plaintiff's second cause of action for quantum meruit fails to state a claim upon which relief can be granted. Emphasizing that quasi contracts are implied in law only in the absence of express agreements, Defendant states that Plaintiff cannot seek relief based on quantum meruit in his second claim because his first claim, for breach of contract, alleges that his claim of entitlement to commissions is covered by Maxwell's 1988 Sales Compensation Plan. (Def.'s Mem. at 3–4).

Defendant's argument fails to take into account the lenient provisions for alternative pleading under Rule 8(e)(2) of the Federal Rules of Civil Procedure, which provides that:

> A party may set forth two or more statements of a claim … alternately or hypothetically, either in one count … or in separate counts…. A party may also state as many separate claims … as the party has regardless of consistency….

Federal courts have construed this language to "permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim…." Wright and Miller, 5 Federal Practice and Procedure: Civil 2d § 1283, at 537 (1990). *See, e.g., Seiden*, 754 F.Supp. at 39–40 (stating that both federal and New York state

pleading rules "permit the pleading of contradictory claims alleging both breach of a contract or, in the alternative, a quasi contract").

Furthermore, courts generally dismiss claims for quantum meruit on the pleadings only when it is clear from the face of the complaint that there exists an express contract that clearly controls. *See, e.g., Clark–Fitzpatrick*, 521 N.Y.S.2d at 656, 516 N.E.2d at 193 (granting motion to dismiss quasi contract claim in light of existence of written contract defining relationship between parties and "fully detailing all applicable terms and conditions"). In contrast, when the existence of the contract is in dispute, a plaintiff may plead breach of contract and quantum meruit in the alternative. *See Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc.*, 742 F.Supp. 808, 812 (S.D.N.Y.1990), *citing* Fed.R.Civ.P. 8(e) and *Shapiro v. Dictaphone Corp.*, 66 A.D.2d 882, 411 N.Y.S.2d 669 (1978).

■ Here, the complaint does not set forth an express contract: the contract, if it is found to exist, must be inferred from Maxwell's Sales Compensation Plan.[1] Although New York law permits courts to imply contracts from compensation plans, *see, e.g., DiCocco v. Capital Area Comm. Health Plan*, 135 A.D.2d 308, 525 N.Y.S.2d 417, 419 (1988), *citing Weiner v. McGraw Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), the determination of whether a contract should be implied from any particular policy manual, and if so, what specific terms should be identified and enforced, involves an issue for the trier of fact that cannot be decided on the basis of the writing alone. *See Lapidus v. New York City Chapter of the New York State Ass'n for Retarded Children, Inc.*, 118 A.D.2d 122, 504 N.Y.S.2d 629, 632 (1986); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852 (2d Cir.1985). In considering

---

**1.** Defendant's attempt to analogize this case to *Naylor v. CEAG Electric Corp.*, 158 A.D.2d 760, 551 N.Y.S.2d 349 (3rd Dept.1990), is misplaced. In *Naylor,* unlike here, plaintiff had an express written agreement governing his role as sales representative for defendant and his receipt of

sales commissions. *See Naylor,* 551 N.Y.S.2d at 350. In contrast, the contract at issue here must be implied from the Maxwell Sales Compensation Plan, which allegedly was given to Plaintiff when he began working for Defendant company.

whether to imply contracts, New York courts make a factual determination after considering the "totality of the circumstances" surrounding the writing. *See Lapidus*, 504 N.Y.S.2d at 632; *Gorrill*, 761 F.2d at 852. In light of the above, Defendant's motion to dismiss the second count of the complaint is denied.

### Plaintiff's Third Claim

Plaintiff's third claim states that Defendant breached its covenant of good faith and fair dealing when it terminated Plaintiff without paying him certain sales commissions. Under New York law, indefinite employment is considered "hiring at will which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983); *Arledge v. Stratmar Systems, Inc.*, 948 F.2d 845 (2d Cir.1991). New York employers owe their at-will employees no duty of good faith and fair dealing with respect to termination of employment. *See id.* Plaintiff, who was employed for an indefinite term, does not challenge, for purposes of this motion, Defendant's characterization of Plaintiff's former employment as at-will. (Pl.'s Mem. at 13, n.*).

The Second Circuit found an exception to New York's stringent at-will rule in *Wakefield*, a case with facts similar to those at issue here. In *Wakefield*, a salesman claimed that he was fired partly in order to deprive him of considerable sales commissions. *See Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 111–112 (2d Cir.1985). The Second Circuit held that even in the at-will employment context, a court can imply a covenant of good faith between employer and employee where doing so is necessary to effectuate the intent of the parties:

> A covenant of good faith should not be implied as a modification of an employer's right to terminate an at-will employee because even a whimsical termination does not deprive the employee of benefits expected in return for the employee's performance. This is so because performance and the distribution of benefits occur simultaneously, and neither party is left high and dry by the termination. Where, however, a covenant of good faith is necessary to enable one party to receive the benefits promised for performance, it is implied by the law as necessary to effectuate the intent of the parties.

*Id.* at 112. The court held that even though the plaintiff in *Wakefield* could not recover for his termination *per se*, he could recover under the covenant of good faith and fair dealing if he demonstrated that his employer fired him in order to avoid paying him commissions. *See id.* at 112–113.

Recently, however, the decision in *Wakefield* was ignored by the majority in a decision of the New York Court of Appeals affirming New York's strong at-will employment rule. The case involved an employee who purchased stock in his employer's company; the purchase was subject to a mandatory buy-back provision, according to which the employer had to buy back the stock when the employee was terminated or quit. *See Gallagher v. Lambert*, 74 N.Y.2d 562, 549 N.Y.S.2d 945, 945, 549 N.E.2d 136 (1989). The employee was fired shortly before the date when, under the terms of the repurchase agreement, the price at which the employer bought back the employee's stock would have increased. *Id.* The employee sued his employer, alleging that the employer fired him at that particular moment in order to avoid paying him the higher price for his stock, and demanded payment for his shares at the higher price. *Id.*, 549 N.Y.S.2d at 946, 549 N.E.2d at 136. Making no reference to *Wakefield*, the majority opinion reiterated New York's strong at-will employment rule and refused to find that the employer had breached any duty owed to the employee. *Id.* at 947, 549 N.E.2d at 138. The court stated that there was "no dispute that the employer had the unfettered discretion to fire plaintiff at any time" and therefore the court "should not redefine the precise measuring device and scope of the agreement." *Gallagher*, at 947, 549 N.E.2d at 138. The court further emphasized that the buy-back provision at issue was "designed for the

benefit of both parties precisely so that they could know their respective rights on certain dates and avoid costly and lengthy litigation on the 'fair value' issue." *Id.*

Although the court in *Gallagher* did not mention *Wakefield*, the *Gallagher* dissent cited the Second Circuit decision to support its assertion that there should be an implied covenant of good faith and fair dealing based on the expectations and the relationship of the parties, as structured by the shareholder's agreement. *Gallagher,* at 950, 549 N.E.2d at 141. Construing this dissenting opinion to imply that the majority in *Gallagher* rejected *Wakefield* in spite of the fact that the majority did not even mention the Second Circuit decision, a 1990 Southern District of New York decision in turn rejected *Wakefield* and applied New York's at-will employment rule strictly. *See Collins & Aikman Floor Coverings Corp. v. Froehlich,* 736 F.Supp. 480 (S.D.N.Y.1990). The court in *Collins & Aikman* found that the majority in *Gallagher* had "rejected the dissent's reliance on *Wakefield* for the proposition that there is a covenant of good faith which gives rise to obligations surviving the termination of an employment relationship." *Id.* at 485. The court further asserted that reliance on *Wakefield* in New York was unwarranted because the *Wakefield* court cited almost no New York case law when developing its exception to the at-will employment rule. *Id.* In light of the *Gallagher* court's reaffirmation of New York's at-will employment rule in the face of *Wakefield,* and in light of *Wakefield*'s failure to cite New York cases, the court in *Collins & Aikman* interpreted *Gallagher* to stand for the proposition that "[r]eliance upon *Wakefield* turned out to be in error under New York law." *See id.* at 486, *citing Gallagher v. Lambert,* 74 N.Y.2d 562, 549 N.Y.S.2d 945, 549 N.E.2d 136 (1989). Relying on *Gallagher,* the Court in *Collins & Aikman* rejected as a mistake of law the arbitrator's decision that the manufacturer owed an implied duty of good faith and fair dealing to its salesman under an at-will employment contract when the manufacturer terminated the salesman in order to avoid paying him commissions. *Id.*

We begin our analysis of this issue by noting that, were it not for the *Gallagher* decision, this Court would follow the Second Circuit's decision in *Wakefield* without elaboration. However, in light of the New York Court of Appeals' pronouncement in *Gallagher,* the Court must consider the impact of *Gallagher* on the authority of the Second Circuit's *Wakefield* decision regarding New York law. Although *Gallagher* can be read as a rejection of *Wakefield,* such a reading is not necessary. It is important to note at the outset that the majority in *Gallagher* did not even consider *Wakefield.* Furthermore, given the *Gallagher* dissent's reliance on *Wakefield,* the majority had a clear invitation to signal either its acceptance or its rejection of *Wakefield* but it declined to do so. Therefore, if *Gallagher* is distinguishable from *Wakefield,* there is no reason to read into the majority's decision any assessment of *Wakefield.*

*Gallagher* is distinguishable from both *Wakefield* and the facts at issue here. *Gallagher* involved a buy-back provision for employee stock, whereas *Wakefield* and this case involve sales commissions due and owing to employees. A sales commission provision provides for an employer to pay its employees commissions earned through the employees' own efforts. In contrast, a stock buy-back provision affords employees a form of compensation that is related merely to the employees' length of tenure rather than to the extent of their efforts. The Second Circuit's finding of an implied covenant of good faith and fair dealing, while compelling in the sales commissions context, is less so in the stock buy-back context because buy-back provisions do not relate as directly to the efforts of employees as do sales commission provisions. The Court therefore finds that *Gallagher* is distinguishable from both *Wakefield* and this case.

However, in spite of this distinction, the Court must consider whether to read the *Gallagher* court's tenacity in holding to an unfettered at-will doctrine as a rejection of any incursion into that doctrine's rule. The Court declines to undertake such a reading

of *Gallagher*, especially in light of the countervailing Second Circuit authority in *Wakefield* and the different factual contexts of the two cases. The Court concludes that *Gallagher* does not disturb the authority of *Wakefield*, at least in the context of employment sales commission provisions. In light of the above, Defendant's motion to dismiss Plaintiff's claim that Defendant violated its implied covenant of good faith and fair dealing by terminating him in order to avoid paying sales commissions is hereby denied.

### Plaintiff's Fourth Claim

Plaintiff's fourth claim states that Defendant's representations to Plaintiff regarding the reasons for his termination were fraudulent misrepresentations. In order to plead a cause of action for fraud and misrepresentation under New York law, a plaintiff must allege "representation of a material existing fact, falsity, scienter, deception and injury." *Lanzi v. Brooks*, 54 A.D.2d 1057, 388 N.Y.S.2d 946, 947, *aff'd*, 54 A.D.2d 1057, 388 N.Y.S.2d 946 (3rd Dept.1976); *Ris v. Finkle*, 148 Misc.2d 773, 561 N.Y.S.2d 499 (1989). Furthermore, New York law imposes a more stringent standard of pleading for fraud than for other causes of action, requiring that " 'the circumstances constituting the wrong shall be stated in detail.' " *Lanzi*, 388 N.Y.S.2d at 947–48, *quoting* N.Y.Civ.Prac.L. & R. § 3016(b).

Pursuant to this standard, Plaintiff has failed sufficiently to plead fraud and misrepresentation under New York law. Plaintiff alleges that Defendant's explanation for his discharge involved "false," "fraudulent" and "gross misrepresentations" that were made "knowingly, willfully and maliciously ... by [Plaintiff's] supervisors at [Defendant company] in an

attempt to avoid paying [Plaintiff] large sales commission bonuses." Complaint ¶ 38. Plaintiff has failed to demonstrate that he relied on Defendant's explanation and that he was injured as a result of such reliance, two necessary elements of a claim for fraud and misrepresentation under the standard set forth in *Lanzi*.[2] In light of Plaintiff's failure to allege reliance and resulting injury, Plaintiff's claim for fraud and misrepresentation is hereby dismissed for failure to state a claim upon which relief can be granted.

### Plaintiff's Fifth Claim

Plaintiff's fifth claim seeks recovery for intentional infliction of emotional distress. New York law has adopted the standard set forth in the Restatement of Torts, according to which a plaintiff must allege four separate elements in order to state a claim for intentional infliction of emotional distress: that the defendant engaged in extreme and outrageous conduct; that the defendant intended to cause distress or knew his conduct would result in distress; that the plaintiff suffered severe emotional distress; and that the defendant's conduct in fact caused plaintiff's distress. *See Richard L. v. Armon*, 144 A.D.2d 1, 536 N.Y.S.2d 1014, 1015–16 (2nd Dept.1989) (citations omitted). New York courts have further incorporated a comment issued pursuant to the Restatement of Torts, according to which liability is found " 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *See, e.g., Murphy*, 461 N.Y.S.2d at 236, 448 N.E.2d at 90, *quoting* Restatement of Torts, 2nd § 46(1), Comment D.

---

2. Plaintiff makes a belated attempt, in his opposition papers, to allege that Defendant engaged in a fraudulent scheme to "cover up" the real reason for Plaintiff's dismissal. (Pl.'s Mem. at 16–19). It is well established that, on a motion to dismiss, the court may consider only the allegations made in plaintiff's complaint, or any document attached to the complaint as an exhibit or incorporated by reference. *See Goldman*, 754 F.2d at 1065–66. To the extent a court considers matters outside the complaint in ruling a motion to dismiss, the court must treat the motion as one for summary judgement and it must provide all parties with a reasonable opportunity to present material pursuant to a motion for summary judgment. *See id.* at 1066. The Court therefore declines to consider the allegations made for the first time in Plaintiff's opposition to Defendant's motion to dismiss.

Other courts in New York have dismissed claims for intentional infliction of emotional harm brought by former employees in cases involving conduct far more, or at least as, serious as that alleged by the Plaintiff here. For example, the Eastern District of New York dismissed a claim for failure to state a cause of action for intentional infliction of emotional harm even though plaintiff alleged that her former employer had ostracized and isolated her, engaged in a campaign of harassment against her, falsely accused her of time abuse, improperly denied vacation and personal leave and gave her unjustifiably poor evaluations. *See Kirwin v. New York State Office of Mental Health,* 665 F.Supp. 1034, 1040 (E.D.N.Y.1987) (finding that these allegations merely amounted to "insults, indignities, annoyances and petty oppressions which d[id] not constitute outrageous conduct"). *See also Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906, 919 (S.D.N.Y.1990) (denying claim for intentional infliction of emotional distress where employer wrongfully terminated employee in order to avoid paying full pension benefits); *Murphy,* 461 N.Y.S.2d at 236, 448 N.E.2d at 90 (denying at-will employee's claim of intentional infliction of emotional distress in spite of allegations that employer terminated employee in a humiliating manner, on the basis of his disclosure of certain improprieties to top management and because of his age).

█ Plaintiff alleges that Defendant intentionally, willfully and maliciously misrepresented the facts and circumstances of Plaintiff's job performance and used these misrepresentations as a basis for Plaintiff's termination. Complaint ¶ 41. Plaintiff also alleges that these misrepresentations shocked, embarrassed and humiliated him and that, as a result, he suffered "nervous and erratic behavior, weight loss, lack of sleep, puffiness and swelling." Complaint ¶¶ 44–45. These allegations do not amount to outrageous conduct, as required by New York law. Plaintiff's fifth cause of action for intentional infliction of emotional harm is hereby dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion to dismiss Plaintiff's fourth and fifth causes of action for failure to state a claim upon which relief can be granted under New York law. The Court denies Defendant's motion to dismiss Plaintiff's second and third causes of action.

The clerk is ordered to dismiss Plaintiff's fourth and fifth causes of action. The parties should appear before Judge Wood for a scheduling conference on June 5, 1992, at 12:00 P.M., in courtroom 2703.

SO ORDERED.