OPINION OF THE COURT
Bellacosa, J.
Plaintiff Gallagher purchased stock in the defendant close corporation with which he was employed. The purchase of his 8.5% interest was subject to a mandatory buy-back provision: if the employment ended for any reason before January 31, 1985, the stock would return to the corporation for book value. The corporation fired plaintiff prior to the fulcrum date, after which the buy-back price would have been higher.
We must decide whether plaintiffs dismissed causes of action, seeking the higher repurchase price based on an alleged breach of a fiduciary duty, should be reinstated. We think not and affirm, concluding that the Appellate Division did not err in dismissing these causes of action by summary judgment because there was no cognizable breach of any fiduciary duty owed to plaintiff under the plain terms of the parties’ repurchase agreement.
Gallagher was employed by defendant Eastdil Realty as a mortgage broker from 1968 to 1973. Three years later, in 1976, he returned to the company as a broker, officer and director, serving additionally as president and chief executive officer of defendant’s wholly owned subsidiary, Eastdil Advisors, Inc. Gallagher was at all times an employee at will. Still later, in 1981, Eastdil offered all its executive employees an opportunity to purchase stock subject to a mandatory buyback provision, which provided that upon "voluntary resignation or other termination” prior to January 31, 1985, an employee would be required to return the stock for book value. After that date, the formula for the buy-back price was keyed to the company’s earnings. Plaintiff accepted the offer and its terms.
On January 10, 1985, Gallagher was fired by Eastdil Realty. He did not and does not now contest the firing. But he demanded payment for his shares calculated on the post-January 31, 1985 buy-back formula. Eastdil refused and Gallagher sued, asserting eight causes of action. Only three claims, based on an alleged breach of fiduciary duty of good faith and fair dealing, are before us. The trial court denied defendants’ motion for summary judgment on these claims, stating that factual issues were raised relating to defendants’ motive in *566 firing plaintiff. The Appellate Division, by divided vote, reversed, dismissed those claims and ordered payment for the shares at book value. That court then granted leave and certified the following question to us: "Was the order of this Court, which modified the order of the Supreme Court, properly made?”
The parties negotiated a written contract containing a common and plain buy-back provision. Plaintiff got what he bargained for — book value for his minority shares if his employment in the corporation ended before January 31, 1985. There being no basis presented for the courts to interfere with the operation and consequences of this agreement between the parties, the order of the Appellate Division granting summary judgment to defendants, dismissing the first three causes of action, should be affirmed and the certified question answered in the affirmative.
Earlier this year, in Ingle v Glamore Motor Sales (73 NY2d 183), we expressly refrained from deciding the precise issue presented by this case. There, the challenge was directed to the at-will discharge from employment and was predicated on a claimed fiduciary obligation flowing from the shareholder relationship. Relying principally on Sabetay v Sterling Drug (69 NY2d 329, 335-336) and Murphy v American Home Prods. Corp. (58 NY2d 293, 300), we held that "[a] minority shareholder in a close corporation, by that status alone, who contractually agrees to the repurchase of his shares upon termination of his employment for any reason, acquires no right from the corporation or majority shareholders against at-will discharge. ” (Ingle v Glamore Motor Sales, 73 NY2d, supra, at 188 [emphasis added].) However, we cautioned that "[i]t is necessary * * * to appreciate and keep distinct the duty a corporation owes to a minority shareholder as a shareholder from any duty it might owe him as an employee. ” (Id., at 188.)
The causes before us on this appeal are based on an alleged departure from a fiduciary duty of fair dealing existing independently of the employment and arising from the plaintiff’s simultaneous relationship as a minority shareholder in the corporation. Plaintiff claims entitlement to the higher price based on a breach flowing from Eastdil’s premature "bad faith” termination of his at-will employment because, he asserts, the sole purpose of the firing at that time was to acquire the stock at a contractually and temporally measured lower buy-back price formula.
*567 The claim seeking a higher price for the shares cannot be neatly divorced, as the dissent urges, from the employment because the buy-back provision links them together as to timing and consequences. Plaintiff not only agreed to the particular buy-back formula, he helped write it and he reviewed it with his attorney during the negotiation process, before signing the agreement and purchasing the minority interest. These provisions, which require an employee shareholder to sell back stock upon severance from corporate employment, are designed to ensure that ownership of all of the stock, especially of a close corporation, stays within the control of the remaining corporate owners-employees; that is, those who will continue to contribute to its successes or failures (see, Kessler, Share Repurchases Under Modern Corporation Laws, 28 Fordham L Rev 637, 648 [1959-1960]). These agreements define the scope of the relevant fiduciary duty and supply certainty of obligation to each side. They should not be undone simply upon an allegation of unfairness. This would destroy their very purpose, which is to provide a certain formula by which to value stock in the future (Allen v Biltmore Tissue Corp., 2 NY2d 534, 542-543). Indeed, the dissenters in Ingle itself acknowledged that employee shareholders would be precluded from complaining about the terms of an otherwise enforceable buy-back provision (Ingle v Glamore Motor Sales, 73 NY2d, supra, at 192, n 1).
Gallagher accepted the offer to become a minority stockholder, but only for the period during which he remained an employee. The buy-back price formula was designed for the benefit of both parties precisely so that they could know their respective rights on certain dates and avoid costly and lengthy litigation on the "fair value” issue (see, Coleman v Taub, 638 F2d 628, 637). Permitting these causes to survive would open the door to litigation on both the value of the stock and the date of termination, and hinder the employer from fulfilling its contractual rights under the agreement. This would frustrate the agreement and would be disruptive of the settled principles governing like agreements where parties contract between themselves in advance so that there may be reliance, predictability and definitiveness between themselves on such matters. There being no dispute that the employer had the unfettered discretion to fire plaintiff at any time, we should not redefine the precise measuring device and scope of the agreement. Defendant agreed to abide by these terms and thus fulfilled its fiduciary duty in that respect.
*568 The dissenting opinion uses a number of rhetorical characterizations about the defendant and about what we are deciding or avoiding to decide, none of which, we believe, require response, because our holding and rationale rest on the application of fundamental contractual principles to the plain terms in the parties’ own stock repurchase agreement.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.