UNIGROUP, INC., Appellee,

v.

O'ROURKE STORAGE & TRANSFER COMPANY; Appellant,

Ransler Moving Systems; H.G. Bauer Moving & Storage, and Barton J. Winokur, Intervenors/Appellants.

No. 92–1076.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Dec. 3, 1992.

Steven B. Feirson, Philadelphia, Pa., argued (Nancy J. Bregstein, Marshall Walthey, Mark A. Arnold and Matthew D. Menghini, on the brief), for appellant.

Thomas E. Wack, St. Louis, Mo., argued (Abraham C. Reich, on the brief), for appellee.

Before McMILLIAN, WOLLMAN and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellants O'Rourke Storage & Transfer Co. (O'Rourke), Ransler Moving Systems (Ransler), H.G. Bauer Moving & Storage (Bauer), and Barton J. Winokur (Winokur), as trustee for The Sidney and Marie Harrison Trust, record owner of stock formerly owned by Walker Transportation Co., appeal from an order entered in the United States District Court[1] for the Eastern District of Missouri, granting partial summary judgment[2] in favor of appellees UniGroup, Inc., and its directors. The district court held that under the plain language of the corporate by-laws appellees had no duty to pay "fair value," to repurchase UniGroup stock. *UniGroup, Inc., v. O'Rourke Storage & Transfer Co.*, No. 89–2122–C–5, slip op. at 11–13 (E.D.Mo. Aug. 2, 1991) (memorandum). For reversal, appellants argue the district court erred in (1) construing the corporate by-law governing the repurchase of stock as a matter of law rather than submitting it to the jury, and (2) holding, as a matter of law, that there is no fiduciary duty to pay more than book value to repurchase stock. For the reasons discussed below, we affirm the order of the district court.

## BACKGROUND

UniGroup incorporated as United Van Lines, Inc., in 1947, is a closely held corporation organized under the laws of the State of Missouri. It is wholly owned and controlled by 133 agents who are the sole shareholders.[3] Each shareholder acquires an equal 45 share voice in the corporate governance and in the election of directors and may participate in UniGroup's permanent lease fleet. Its eighteen directors are elected every two years and there are no outside directors. UniGroup does business through its network of independent moving and storage agents, all actively engaged in their own separate businesses. The agents provide UniGroup's sales and hauling services and own or lease virtually all of the household goods moving vans and rolling stock which bear UniGroup's name and logo.

In 1962, in an effort to maintain ownership in the hands of those who produce its revenue, the shareholders adopted a stock redemption provision. The provision, which was added to the corporate by-laws, provided in part that:

Any stockholder desiring to sell, transfer, or otherwise dispose of his shares of stock shall offer the same for repurchase by this Company or by someone designated by the Board of Directors of this Company at the book value thereof as shown on the books of the Company as of the end of the preceding calendar or six-months period, ending each June 30 and December 31.

On March 11, 1971, the shareholders amended that by-law to provide that any repurchase would be "at such price as the Board of Directors may from time to time determine but in no event less than the book value thereof." In 1987, the articles of incorporation were amended to require the corporate repurchase of stock whenever the shareholder ceased to be an active agent. That same year the by-laws were again amended to provide that the repurchase price could never be less than the amount paid for the stock:

The purchase price for any such shares shall be such price as the Board of Directors may from time to time determine but in no event less than the greater of

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. On December 2, 1991, the district court concluded that there was no just reason for delay and certified its partial summary judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b).

3. Not all the agents buy stock. Although UniGroup has a network of more than five hundred agents, the Corporation has only 133 current shareholders.

(i) the book value thereof as shown on the audited financial statements of the Corporation as of the end of the fiscal year most recently completed prior to the date of purchase, or (ii) the price paid to the Corporation in connection with the original issuance of such shares.

Although UniGroup has enjoyed substantial growth and record earnings,[4] it has consistently refused to pay more than book value for the repurchase of stock except on one occasion when it paid a 50% premium.[5]

In 1989, Winokur filed suit in the District Court for the Eastern District of Pennsylvania challenging UniGroup's attempt to force repurchase of the trust's stock at book value; the complaint alleged the book value was substantially less than fair value. In October 1989 UniGroup filed suit in Missouri state court against O'Rourke, seeking to force O'Rourke to sell its shares to UniGroup at book value. O'Rourke removed the action to the District Court for the Eastern District of Missouri and filed an answer and counterclaim. Winokur's suit was transferred to the District Court for the Eastern District of Missouri. Ransler,[6] Bauer[7] and Winokur then intervened in the O'Rourke action and filed nearly identical counterclaims against UniGroup and its directors, all seeking fair value for their shares. Winokur's lawsuit was consolidated with the O'Rourke action for purposes of discovery and was in effect dismissed without prejudice.

On August 31, 1990, after fifteen months of substantive discovery, appellees filed a motion for summary judgment on counts I, II and VI of appellants' counterclaims. Count I sought a declaration that the corporate by-law governing forced repurchases is illegal and unenforceable as applied by UniGroup; counts II and VI challenged

the purchase price at book value as unfair and the seizure of shares as conversion. The district court heard oral arguments and considered written memoranda filed by the parties.

On August 2, 1991, the district court found that the plain language of the corporate by-law governing forced repurchases did not create a legal duty to pay more than book value and granted summary judgment in favor of appellees on counts I, II and VI. Slip op. at 11. Although appellants conceded in their opposition to the motion for summary judgment that the by-law is valid, they challenged its interpretation and application by UniGroup. The district court, however, rejected appellants' claim that the language of the by-law created a fiduciary duty on the part of UniGroup to pay "fair value." *Id.* at 11. The district court also denied appellants' motions for class certification and motions to supplement the record. *Id.* On December 2, 1991, the district court certified its partial summary judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b). This appeal followed.

## DISCUSSION

### I.

This case comes to us following the entry of summary judgment in district court. We review the district court's grant of summary judgment de novo, *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992), and apply the same standards used by the district court. *Thelma D. by Delores A. v. Board of Educ.*, 934 F.2d 929, 932 (8th Cir.1991). The question before the district court and this court on appeal is whether the record, when viewed in the light most favorable to

4. During the 1980s, annual increases in book value ranged from 10% to 25%. According to UniGroup book value per block of stock rose from $96,744 in 1979 to $323,841 in 1988 and to $407,256 in 1989.

5. According to UniGroup, in 1987 it paid 150% of book value to acquire the stock of a specific group of five former agents who had left UniGroup and become affiliated with competing van lines.

6. In 1987, Ransler a Michigan corporation, after a disagreement with UniGroup over insurance coverage, had its shares repurchased at book value.

7. In early 1987, Bauer a Louisiana corporation, in an effort to generate working capital, agreed to sell its shares back to UniGroup at book value.

the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*Anderson*); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990).

To withstand a motion for summary judgment, a party need not prove in its favor an issue of material fact; all that is required is sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

## II.

Appellants first argue that the district court erred in construing the corporate repurchase by-law itself rather than submit it to a jury.[8] Appellees, however, argue that the district court correctly construed the by-law itself because by-laws are construed like contracts and contract construction is a matter of law for the court to decide. We agree.

■ Under Missouri law "corporate articles and by-laws are to be construed according to general rules governing contracts." *Boatmen's First Nat'l Bank v. Southern M. Dist. Council of the Assem-*

*blies of God,* 806 S.W.2d 706, 714 (Mo.Ct. App.1991). Thus, the district court was correct in construing the corporate repurchase by-law itself because contract interpretation and construction is a question of law which the court decides, not the jury. *See John Deere Ins. v. Shamrock Indus.,* 929 F.2d 413, 417 (8th Cir.1991).

■ Appellants further argue the district court erred in holding that the plain language of the corporate repurchase by-law did not require the directors to pay more than book value. Appellants argue that the phrase "may from time to time" means when the directors can establish the repurchase price, that is quarterly or annually or on a case-by-case basis, and not whether the directors can exercise their discretion to set the repurchase price at less than fair value. Appellees argue that the district court correctly held that the by-law did not require the directors to pay more than book value because the term "may" unambiguously gives the directors permission, but does not require them, to pay more than book value. They further argue that the plain language of the by-law cannot be circumvented to obtain a desired result. We agree.

Whether the language of a contract or by-law provision is ambiguous is a question of law. *Harris v. Union Elec. Co.,* 622 S.W.2d 239, 247 (Mo.Ct.App.1981) (*Harris*); *Busch & Latta Painting v. State Highway Comm'n,* 597 S.W.2d 189, 197 (Mo.Ct.App. 1980). In determining whether the language of a contract or by-law provision is ambiguous, we give the words in the contract or by-law provision their common sense and ordinary meaning. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 274 (Mo.1973) (*Hathman*). We agree with the district court that an accepted dictionary definition of "may" is "permission," and permission to do a thing is not a requirement or order that it be done. Slip op. at 11.

---

**8.** Appellants also argue that the district court improperly denied their motions to supplement the record. We hold that the district court properly exercised its discretion in denying the motions because the opposing affidavits and other legal memoranda were not properly filed as required by Fed.R.Civ.P. 56(c) and E.D.Mo.R. 7(B).

The plain language of the corporate repurchase by-law reveals that: (1) "price" does not mean "fair value"; (2) the only value mentioned is "book value"; (3) "not less than book value" and "fair value" are in no way synonymous; (4) nothing in the by-law requires appraisals, stock valuations, or payments of earnings multiples; and (5) "may from time to time determine" does not mean that appellees must meet from time to time to establish a fair price. Thus, we hold the district court was correct in holding as a matter of law that the plain language of the by-law does not create a legal duty on the part of appellees to pay more than book value for repurchased shares.

### III.

◼ Appellants next argue that because the corporate repurchase by-law gives the board of directors the discretion to pay more than book value for repurchased shares and because Missouri law specifically implies a duty of good faith and fair dealing in every contract or by-law provision and prohibits the oppression of minority shareholders,[9] the district court erred in holding that the directors did not have a fiduciary duty to exercise that discretion to pay "fair value" for repurchased shares. Appellants contend that the district court's reliance on *Martin v. Graybar Elec. Co.*, 285 F.2d 619 (7th Cir.1961) (*Martin*) (no legal duty to pay more than agreed to book value), and *Gallagher v. Lambert*, 74 N.Y.2d 562, 549 N.E.2d 136, 549 N.Y.S.2d 945 (1989) (*Gallagher*) (no fiduciary duty to pay more that book value), is misplaced. Appellants claim that, unlike the present case, *Martin* and *Gallagher* dealt with stock ownership tied to employment and involved forced repurchase provisions containing a fixed price which did not require or allow directors to exercise discretion.

Appellees argue that *Martin* and *Gallagher* cannot be distinguished on the grounds that stock ownership was tied to employment, because the same is true in the present case where only active agents can become shareholders and where agency termination triggers the stock repurchase provisions. Appellees further argue that both decisions illustrate the uncertainty and consequent litigation potential underlying every "fair value" determination. We agree.

Moreover, although appellants' argument on this issue is predicated on a breach of duty, there cannot be a breach without a duty. It certainly does not follow that because directors are deemed fiduciaries, they owe a duty to pay "fair value" in the repurchase of stock. "[T]o say that a man is a 'fiduciary only begins analysis; it gives discretion to further inquiry. To whom is he a fiduciary? In what respect has he failed to discharge those obligations? And what are the consequences of his deviation from duty?" *SEC v. Chenery Corp.*, 318 U.S. 80, 85–86, 63 S.Ct. 454, 458, 87 L.Ed. 626 (1943). In the present case the corporate repurchase by-law permits payment of book value but does not require payment of "fair value. Furthermore, the by-law cannot be re-written under the result-oriented rubric of "good faith and fair dealing." It does not follow that acting according to the terms of the by-law is a breach of good faith and fair dealing. *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 983 (8th Cir.1991); *Lemay Bank & Trust Co. v. Harper*, 810 S.W.2d 690, 693 (Mo.Ct.App.1991). Thus, we hold that the district court correctly held that appellants' interpretation of the corporate repurchase by-law as creating a fiduciary duty to pay "fair value" had no merit.

### IV.

Appellants also argue, for the first time here, that the district court erred in not considering extrinsic evidence on the issue of by-law interpretation. They contend that a review of the history of the corporate repurchase by-law, the directors' understanding of its meaning and the course of conduct under the by-law show that the corporate repurchase by-law is susceptible of more than one reasonable interpretation.

---

9. Appellants cannot seize the mantle of "minority shareholders" because, under UniGroup's framework, all shareholders—directors and non-directors alike—have an equal interest consisting of 45 shares or .0075 of the total.

■ As a preliminary matter we note that arguments raised for the first time on appeal will not be considered. *Empire State Bank v. Citizens State Bank*, 932 F.2d 1250, 1253 (8th Cir.1991). Although we have made an exception when refusal to hear the argument "would be a plain miscarriage of justice or inconsistent with substantial justice," *Kelley v. Crunk*, 713 F.2d 426, 427 (8th Cir.1983), we have repeatedly upheld summary judgment where the issue is interpretation of an unambiguous contract. *Nelson v. Becton*, 929 F.2d 1287 (8th Cir.1991); *Hazen First State Bank v. Speight*, 888 F.2d 574 (8th Cir.1989); *United States v. McLain*, 769 F.2d 500 (8th Cir.1985); *Gibbons v. Graves Const. Co.*, 727 F.2d 753 (8th Cir.1984).

■ The fact that the parties disagree over the meaning of a contract or provision not does create an ambiguity. *Hathman*, 491 S.W.2d at 264. Furthermore, extrinsic evidence cannot be used to create an ambiguity. *Harris*, 622 S.W.2d at 247. Finally, none of the evidence proposed support the suggested conclusion, and, therefore, raised no "*genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

Accordingly, we affirm the order of the district court.