■ In the Matter of the Dissolution of FUNPLEX, INC. HARVEY GORDON et al., Appellants; J. FELIX STREVELL et al., Respondents. [624 NYS2d 681] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Keegan, J.), entered June 21, 1994 in Albany County, which, in a proceeding pursuant to Business Corporation Law article 11, granted respondents' motion for partial summary judgment on the issue of the fair value of petitioners' shares of stock.

Funplex, Inc. is a domestic corporation formed in April 1992 by petitioners (Harvey Gordon and Lee Gordon) and respon-

dents (J. Felix Strevell and Mary M. Strevell) to operate a recreational facility in the Town of East Greenbush, Rensselaer County. In July 1992, petitioners, who own 49% of the issued shares, and respondents, who own the remaining 51%, entered into a written contract, by the terms of which they agreed, *inter alia,* that after the facility had been open to the public for two years, respondents could, at any time, exercise a unilateral option to purchase petitioners' shares at a price to be established in accordance with a formula set out in the agreement. The facility opened in August 1992.

Relations between petitioners and respondents became unpalatable and in March 1993, petitioners applied for judicial dissolution of Funplex pursuant to Business Corporation Law § 1104-a. The petition charged that respondents had defrauded petitioners and had diverted corporate assets to their own use. Respondents answered the petition, filed an election to purchase petitioners' shares for fair value as permitted by Business Corporation Law § 1118, and sought partial summary judgment with respect to the proper valuation of the shares. Over petitioners' opposition, Supreme Court adopted respondents' argument that petitioners' shares must be valued solely by the methodology set forth in the parties' July 1992 agreement. Believing that proof as to the value of their shares should not be so limited, petitioners appeal.

Petitioners maintain that the option clause was not intended to apply in the context of a statutory buy-out, and further, that because respondents' option was inoperative until August 1994, the contractual formula has no bearing on the fair value of petitioners' shares as of the valuation date, which was some 17 months prior to that time. This latter argument has some merit, for while a different result might obtain if respondents had an unconditional option to purchase the shares for a calculated price at the time the instant petition was filed, or if the filing for dissolution had triggered such a right *(cf., Gallagher v Lambert,* 74 NY2d 562), the fact remains that the option was not exercisable before 1994, and until then respondents had no contractual right to purchase petitioners' shares at the price established by the agreement. Thus, their election to purchase petitioners' shares, pursuant to Business Corporation Law § 1118, cannot, as they would have it, be deemed simply an exercise of their option.

Respondents maintain that even if this is so, pragmatically, the option formula is nevertheless controlling, for it fixes the highest amount that any reasonable purchaser would have been willing to pay for petitioners' shares on March 2, 1993,

the valuation date, knowing that they could be repurchased 17 months later, by respondents, for that amount. Although it is indisputable that contractual terms governing future sales should be taken into consideration when valuing stock *(see, Amodio v Amodio,* 70 NY2d 5, 7), respondents' contention in this respect is nonetheless unconvincing since its underlying premise, that the option is in fact valid and enforceable, has been called into question by petitioners' factual allegations. Notably, the option was to be exercisable only after the facility had been in operation for two years, and it appears that the price formula contained therein was crafted with the understanding—expressly articulated in the agreement—that petitioners would be actively participating in the business for those first two years, not only earning a specified salary but, more importantly, able thereby to influence the profits earned during that time, from which the agreement provided the purchase price of their shares would be derived. If, as petitioners assert, they were effectively barred from participating in the business in any meaningful way, they would not have received the consideration they were promised in exchange for the option, and this material breach by respondents would preclude their enforcement of the option provisions.

In sum, before the actual effect of the option clause on the fair value of petitioners' shares can be determined, the factual questions raised with respect to respondents' allegedly oppressive conduct and fraud, insofar as they are relevant to the issue of whether respondents breached the agreement, must be resolved *(cf., Matter of Gerzof v Coons,* 168 AD2d 619, 620).

Cardona, P. J., Mikoll, Crew III and Casey, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.