**D. Scott HARGER, Plaintiff,**

v.

**James PRICE, et al., Defendants.**

**No. 01 Civ. 7515(LAK).**

United States District Court,
S.D. New York.

May 30, 2002.

Angelo R. Bianchi, Bianchi & Bianchi, Bloomfield, NJ, for Plaintiff.

Jeffrey B. Sklaroff, Timothy E. Di Domenico, Greenberg Traurig, LLP, New York City, for Defendants SportsLine.com, Inc., and Commissioner.com, Inc.

Steven W. Wolfe, Robin Nelson Wolfe, Kantor, Davidoff, Wolfe, Mandelker & Kass, P.C., New York City, for the Individual Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action is the result of a falling out among founders of an Internet or "dot com" business that was sold for more than $30 million during the heyday of the technology boom. Plaintiff, one of the original principals, claims that his former colleagues effectively did him out of his equity interest in their company in order to gain for themselves the benefits of the merger that produced the large economic reward. The matter is before the Court on the motions of the individual defendants and the acquiring company and its corporate parent to dismiss the third amended complaint on the ground that it fails to state a claim upon which relief may be granted.

### Facts

The Court assumes the truth of the well pleaded factual allegations of the complaint. In addition, as plaintiff has placed before the Court documents that effectively were incorporated by reference in the third amended complaint, the Court considers those as well.[1]

### The Inception of DWWC

Plaintiff and four of the five individual defendants—Messrs. Price, Pezaris, Gersh and Matar—were employed in 1995 in the computer industry as computer programmers and/or technicians. In September of that year, they incorporated Daedalus World Wide Corporation ("DWWC") for the purpose of designing and operating computer programs, software and web sites to be used, operated by or sold to themselves or others. Each contributed $2,000 in capital, received twenty shares of DWWC common stock, and began working for the company,[2] although it appears that that none of the principals worked full time for DWWC until considerably later.[3]

---

1. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002).

   The documents are (1) the stockholders' agreement among plaintiff and the four individual defendants, then the stockholders of Daedalus, (2) the so-called development agreement between Daedalus and SportsLine USA, Inc., and (3) the agreement and plan of merger among Daedalus, SportsLine.com, Inc., and Commissioner.com, Inc. Pl. Mem. Exs. C–E. As Exhibit B, a written consent of the board of DWWC, in the Court's view, was not incorporated by reference in the complaint, the Court does not rely upon it on this motion.

2. Third Amended Complaint ("Cpt") ¶¶ 11–13.

3. See id. ¶ 16.

The group expanded on April 4, 1996 when defendant Fortnow acquired twelve DWWC shares in exchange for a contribution of $2,040.[4]

*1996 through January 1999*

### Plaintiff Surrenders Half His Interest

By September 1996, Pezarus, Gersh, and Price were working for the company at reduced or no salary.[5] Pezaris and Gersh approached plaintiff and Matar on behalf of DWWC and asked that each surrender ten of his shares on the theory that they were not working for DWWC and that it would be unfair for them to have the same equity interests as those who were. Both complied, although Matar at some later date was permitted to subscribe to ten new shares, thus restoring his equity interest.[6]

### The Development Agreement With SportsLine

In May 1998, DWWC entered into a contract with SportsLine USA, Inc., now known as SportsLine.com, Inc. ("Sports-Line"), to develop software for Sports-Line's Internet sports fantasy online service.[7] The Development Agreement required that the 1998–99 National Football League Product, one of the subjects of the contract, be delivered no later than August 15, 1998.[8] It granted SportsLine an option to purchase, and a right of first refusal with respect to, all of the assets of DWWC as well as certain preemptive rights with respect to DWWC stock.[9]

### Plaintiff Becomes a Full Time DWWC Employee

The conclusion of the Development Contract put a good deal of pressure on DWWC to meet its obligations. In May 1998, Pezaris and Gersh asked plaintiff to leave his job and join DWWC to assist with the SportsLine project.[10] Plaintiff agreed to accept employment with DWWC at a salary of less than half that paid by his then current job. According to plaintiff, he was to receive an additional ten shares of DWWC stock "upon certain terms and conditions which would, after two years of employment with DWWC, raise his interest to one-half the respective interests of Price, Fortnow, Pezaris, and Gersh," the ten shares being a first step toward that objective.[11] With plaintiff on board, Price and Fortnow became full time employees of the company in June 1998.[12]

On June 15, 1998, plaintiff entered into two agreements, the first an employment agreement with DWWC (the "Employment Agreement") and the second a stockholders' agreement among plaintiff, Price, Fortnow, Pezaris, Gersh, Matar and DWWC (the "Stockholders' Agreement").[13]

### 1. The Employment Agreement

Although the Employment Agreement allegedly was an executed document, its text does not appear of record. The complaint alleges that it provided that plaintiff would receive ten new shares of DWWC

---

4. *Id.* ¶¶ 14.
   The complaint does not specifically allege that he subscribed for the shares from DWWC, but the Court so infers from the allegation that the acquisition was in respect of a contribution to the corporation.

5. *See id.* ¶ 15.

6. *Id.*

7. *Id.* ¶ 20 & Pl. Mem. Ex. E (hereinafter the "Development Agreement").

8. Development Agreement ¶ 4(b).

9. *Id.* ¶ 11.

10. *Id.* ¶¶ 16, 22.

11. *Id.* ¶ 23.

12. *Id.* ¶ 16.

13. *Id.* ¶¶ 24–25 & Ex. C.

common stock, but that the shares would be voidable if he failed to complete one year of employment to June 15, 1999.[14]

### 2. The Stockholders' Agreement

The Stockholders' Agreement began with a recital that each of the individual signatories owned the number of shares listed on an attached Schedule A. The copy of the agreement that plaintiff has produced to the Court contains the schedule, which shows that defendants Price, Fortnow, Pezaris and Gersh each owned eighty DWWC shares and that plaintiff and defendant Matar each owned twenty.[15] Plaintiff, however, alleges that the schedule was not a part of the Shareholders' Agreement when he signed it and that the fact that the Price, Fortnow, Pezaris and Gersh each owned eighty rather than forty shares was concealed from him.[16] Whatever the fact in that regard, the Shareholders' Agreement did provide that the shareholders could not transfer their DWWC shares except in accordance with the agreement. It went on to give what amounted to a option to buy to DWWC followed, in the event DWWC declined to exercise the option, by an option to non-selling shareholders to buy in the event any of the shareholder parties wished to sell his shares. If in that event neither the corporation nor the non-selling shareholders exercised the options, the selling shareholder would be free to sell to an outsider within a period of thirty days.[17]

### Plaintiff Leaves DWWC

In January 1999, plaintiff left DWWC and moved to Texas to accept other employment.[18] As he left DWWC's employ prior to June 15, 1999, the additional ten shares that were issued to him in June 1998 were cancelled, leaving plaintiff with the ten shares he had acquired upon the formation of the company.[19] Plaintiff offered these to DWWC pursuant to the Stockholders' Agreement but no agreement was reached on price, so plaintiff continued to hold those shares.[20]

### The DWWC—SportsLine Deal

On December 6, 1999, DWWC, Price, Gersh, Fortnow, Pezaris, Commissioner.com, Inc.,[21] and SportsLine entered into an agreement and plan of merger pursuant to which DWWC was merged with and into Commissioner.com, Inc. The outstanding shares of DWWC were converted into a right to receive (a) cash equal to $4 million divided by the total number of fully diluted DWWC shares, (b) SportsLine common stock, and (c) additional compen-

---

14. *Id.* ¶ 24.

15. Ex. C, Recital A & Sched. A.

16. Cpt. ¶ 26.
   The complaint does not address the fact that plaintiff concededly executed the Shareholders' Agreement, which explicitly refers to Schedule A. In other words, plaintiff offers no explanation for the his alleged conduct in signing an agreement that referred to Schedule A without ensuring that Schedule A in fact was attached. Nor does he explain where he obtained the executed copy of the Shareholders' Agreement he submitted to the Court, which includes Schedule A. Finally, he offers no explanation for his allegation that the additional ten shares issued when he joined DWWC in 1998 were to have been a first step to bringing his holding to one-half that of each of the other individuals if he then believed that they each owned only forty shares—the additional shares issued to plaintiff brought his holding to twenty, one-half that of the others, without any further step.

17. Ex. C § 1.3.

18. Cpt. ¶ 27.

19. *See id.* (referring to "ten ... remaining shares").

20. *Id.*

21. Commissioner.com, Inc. is a wholly owned subsidiary of SportsLine.

sation based on future revenues attributable to certain activities of the surviving company.[22]  The complaint asserts that the total compensation received by Price, Fortnow, Pezaris and Gersh was $31 million in cash and stock.[23]  Plaintiff's principal grievance is that he was cut out of this deal.

The complaint alleges—on information and belief—that DWWC and the individual defendants began negotiating with Sports-Line with a view to the latter acquiring all of DWWC's shares "shortly after [plaintiff] left [DWWC's] employment" without notifying plaintiff.[24]  Subsequently, and in anticipation of such a sale, these defendants on November 15, 1999 sent plaintiff an e-mail purportedly cancelling his remaining shares.  When plaintiff disputed this purported cancellation, DWWC is said to have represented to SportsLine that plaintiff's shares were voidable pursuant to an oral agreement in view of the fact that he left DWWC's employ.[25]

This latter assertion is not borne out, at least directly, by the merger agreement, which contains no such representation.  In relevant part, it represents only that there were and, at the closing would be, 355.555 shares of DWWC common stock outstanding.[26]  Further, the agreement characterizes Price, Gersh, Fortnow and Pezaris as "Principal Shareholders," not as the "Shareholders" or with some other form of words implying that they were all of DWWC's shareholders.[27]  Nevertheless, the Court infers, in plaintiff's favor, that the shares were cancelled.[28]

**22.**  Ex. E, §§ 1.1, 3.1, 3.3.

**23.**  Cpt. ¶ 28.

**24.**  *Id.*

**25.**  *Id.* ¶ 29.

**26.**  Ex. E, § 5.3(a).

**27.**  *Id.* at 1.

*The Complaint*

The third amended complaint, which now is the fourth iteration of plaintiff's claims, asserts ten claims for relief, all stemming from plaintiff's underlying contention that he was done out of any share, let alone a fair share, of the SportsLine deal.

*Discussion*

The Court deals *seriatim* with the defendants' attacks on the ten claims for relief.

### I.  The Fraud Claim Against the Individual Defendants and Commissioner.com

The fraud claim in this case is a moving target, as plaintiff cannot seem to decide in what respect or respects he was defrauded.

#### A.  The Fraud Claim in the Complaint

■  The complaint alleges that he retained his ten original shares, rather than selling them to DWWC during the first quarter of 1999, based on a representation by Fortnow "that he could either sell the stock to third parties or hold them until a later date in lieu of selling them to DWWC." Fortnow then failed to disclose that the shares "would terminate" if they were not sold to DWWC and that they were voidable if plaintiff failed to participate in the business "as the Defendants now claim."  As a result of that representation and nondisclosure, plaintiff says, he

**28.**  Although the Court does not rely upon the document on this motion because it is not incorporated by reference in the complaint nor authenticated, it notes that plaintiff has submitted what appears to be a consent of DWWC directors that purports to ratify the cancellation of the shares.  (Pl. Mem. Ex B, at 4)

was excluded from the benefits of the SportsLine merger.[29]

In order to state a claim for fraud, a plaintiff must plead and prove "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages."[30] In general, the law imposes no duty of disclosure in the absence of a fiduciary relationship.[31] Nevertheless, a duty to disclose arises in business negotiations where "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party."[32]

The Court assumes without deciding that (a) DWWC had a right to cancel plaintiff's shares, and (b) Fortnow's alleged statement that plaintiff could retain his ten original DWWC shares and later sell them to a third party would have been sufficiently incomplete or misleading to give rise to a claim for fraud absent disclosure that such a right existed. But those assumptions, even if warranted, would not render plaintiff's fraud claim, as pleaded, legally sufficient.

In view of plaintiff's allegation that DWWC and the individual defendants claimed a right to cancel the original ten shares on the basis of an oral agreement with plaintiff,[33] there are only two possibilities. The first is that plaintiff is correct in asserting that there was no such agreement and no such right to cancel his shares.[34] The second is that plaintiff in fact did enter into such an agreement and that DWWC had such a right.

Whichever is the case, plaintiff has no fraud claim as pleaded in the complaint. If there was no agreement giving DWWC the right to cancel plaintiff's shares, then there was nothing misleading about Fortnow's failure to tell plaintiff that there was. And if there was an oral agreement giving DWWC the right to cancel the shares if plaintiff left its employ, plaintiff certainly knew of it because he was a party to that agreement. Having agreed that DWWC could cancel his shares if he left its employ, any reliance he may have placed on Fortnow's statement that he could sell the shares later would not have been justified.[35]

### B. The New Fraud Claim

Plaintiff's memorandum seeks to set forth an additional fraud claim that is not pleaded in the complaint. The Court nevertheless will deal with it now to avoid yet another motion for leave to amend.

■ The second theory is that plaintiff in June 1998 was induced to leave his other employment and join DWWC full time based on the assumption that Gersh, Fortnow, Price and Pezaris each owned forty DWWC shares when in fact each had been issued forty additional shares; thus

---

**29.** Cpt. ¶¶ 37–38.

**30.** *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 98 (2d Cir.1997).

**31.** *E.g., Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1483 (2d Cir.1995).

**32.** *Id.* at 1484; *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,* 57 F.3d 146, 154 (2d Cir.1995).

**33.** Cpt. ¶ 29.

**34.** *Id.*

**35.** While the justifiability or reasonableness of reliance often is a question of fact, it may be decided as a matter of law when the evidence is so one-sided as to permit only one conclusion. *E.g., DeCarlo v. Archie Comic Pubs., Inc.,* 127 F.Supp.2d 497, 510 n. 81 (S.D.N.Y. 2001), *aff'd,* 11 Fed.Appx. 26 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 647, 151 L.Ed.2d 564 (2001).

plaintiff's proportionate equity in the company upon his acceptance of this employment allegedly was less than he allegedly believed it would be.[36] But this claim too is insufficient.

Plaintiff alleges that Pezaris and Gersh approached him in May 1998 to induce him to return to DWWC. He says they agreed on "terms and conditions which would, after two years of employment with DWWC, raise his interest to one-half of the respective interests of each" of Price, Fortnow, Pezaris and Gersh.[37] The complaint does not, however, say whether Pezaris and Gersh represented that the shares plaintiff would receive after two years would bring his interest to one-half of those of the others or whether, instead, the parties simply agreed that plaintiff would get an additional ten shares—bringing his holding to twenty shares—and that plaintiff mistakenly assumed that the added ten shares would bring him up to one-half of the interests of these four. And while plaintiff's memorandum refers to a "promise" by DWWC through Pezaris and Gersh, it does not say what that promise was.[38] In any case, plaintiff later, on June 15, 1998, signed the Employment Agreement. According to the allegations of the complaint, it provided only that plaintiff would get ten new shares that would be voidable if he left DWWC's employ before June 15, 1999, one—not two—years later. It said nothing about any relationship between the size of plaintiff's holding and those of the others.

The circumstances of an alleged fraud must be pleaded with particularity.[39] "This requires reasonable detail as well as the allegation of facts from which a strong inference of fraud reasonably may be drawn." [40] That standard simply is not satisfied with respect to the second of plaintiff's fraud theories for any of a number of reasons, not least of them the lack of any allegation as to what, if any, representations were made to him. Nevertheless, the Court cannot exclude the possibility that plaintiff might make out a legally sufficient claim on this newly articulated theory.

Accordingly, the first claim for relief fails to state a claim upon which relief may be granted and must be dismissed. The dismissal will be without prejudice to the filing, as against all defendants other than SportsLine, Price and Fortnow, of an amended complaint alleging plaintiff's second theory with the particularity required by Rule 9(b).[41]

## II. The Conversion Claim

■ The second claim for relief is that Price, Fortnow, Pezaris, Gersh and Matar converted plaintiff's original ten shares of DWWC common stock by merging DWWC into Commissioner.com without regard to plaintiff's interest by virtue of their attempted cancellation of those shares.[42]

**36.** Pl. Mem. 6–7.

**37.** Cpt. ¶ 23.

**38.** Pl. Mem. 6–7.

**39.** FED. R. CIV. P. 9(b).

**40.** *National Council of Young Israel v. Wolf,* 963 F.Supp. 276, 280 (S.D.N.Y.1997) (citing *Chill v. General Electric Co.,* 101 F.3d 263, 267 (2d Cir.1996); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 812 (2d Cir.1996);

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)).

**41.** Neither the complaint nor plaintiff's memorandum sets forth any conceivable basis for holding any of these defendants liable, even assuming that Pezaris and Gersh misled plaintiff in inducing him to join DWWC full time in 1998. Commissioner.com, Inc. may be a proper defendant, as it succeeded by merger to DWWC's liabilities.

**42.** Cpt. ¶¶ 42–43.

This claim is legally insufficient.

In order to state a claim for conversion, plaintiff must allege that "(1) [he] had legal ownership or an immediate superior right of possession to specific identifiable personal property, and (2) defendants exercised unauthorized dominion over the property to the exclusion of plaintiff's rights."[43] No action lies for conversion of intangible property.[44] There is no suggestion here that the defendants took plaintiff's stock certificate. Hence, the complaint fails adequately to allege conversion.

### III. Breach of Fiduciary Duty Claim Against Individual Defendants and Commissioner.com

The third claim for relief alleges that Price, Fortnow, Pezaris, Gersh and Matar all were directors of DWWC at the time of the merger, that they therefore owed plaintiff a fiduciary duty, and that they breached that duty by (a) failing to inform plaintiff of the pending transaction with Commissioner.com, and (b) purporting to cancel his shares without legal authority.[45]

■ The first of these theories is insufficient as a matter of law. While "corporate officers and directors [of a New York corporation such as DWWC] have a fiduciary relationship with the shareholders of their corporation," a duty to disclose a pending corporate transaction arises only where they engage in insider trading, where a statute or regulation requires disclosure, or to place in proper context otherwise misleading prior disclosures.[46] There are no such allegations here.

■ The second of plaintiff's allegations stands differently. Corporate directors and controlling shareholders of close corporations like DWWC are held "to the extreme measure of candor, unselfishness and good faith."[47] They may not act "for the aggrandizement or undue advantage of the fiduciar[ies] to the exclusion or detriment of the shareholders."[48] Surely they may not act "if the sole purpose is reduction of the number of profit sharers, or ultimately 'to increase the individual wealth of the remaining shareholders.'"[49]

■ Assuming, as plaintiff alleges, that the individual defendants caused DWWC to cancel plaintiff's remaining ten shares in anticipation of the merger on the basis of a fictitious claim that there was an oral contract permitting that cancellation, their action cannot have had any legitimate corporate purpose. The action would have served only to cut plaintiff out of the SportsLine deal and thus to leave a smaller group among which to share the proceeds of the merger. In this respect, therefore, the third claim for relief states a legally sufficient claim against the director defendants.

■ The same can not be said with respect to Commissioner.com, which also is

---

43. *Global Ent., Inc. v. New York Tel. Co.*, No. 00 Civ. 2959(SHS), 2000 WL 1672327, *5 (S.D.N.Y. Nov.6, 2000).

44. *Rao v. Verde*, 222 A.D.2d 569, 570, 635 N.Y.S.2d 660 (2d Dept.1995); *MBF Clearing Corp. v. Shine*, 212 A.D.2d 478, 479, 623 N.Y.S.2d 204, 205 (1st Dept.1995).

45. Cpt. ¶ 52.

46. *Lindner Fund, Inc. v. Waldbaum, Inc.*, 82 N.Y.2d 219, 223, 604 N.Y.S.2d 32, 624 N.E.2d 160 (1993).

47. *Kavanaugh v. Kavanaugh*, 226 N.Y. 185, 193, 123 N.E. 148 (1919).

48. *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 559, 483 N.Y.S.2d 667, 673, 473 N.E.2d 19 (1984).

49. *Gallagher v. Lambert*, 74 N.Y.2d 562, 572, 549 N.Y.S.2d 945, 949, 549 N.E.2d 136 (1989) (Hancock, J., concurring) (quoting *Alpert*, 63 N.Y.2d at 573, 483 N.Y.S.2d at 675, 473 N.E.2d 19).

named as a defendant on this claim. The complaint contains no allegations suggesting that it owed any fiduciary duty to the plaintiff or that it breached such a duty. The fact that it was aware that plaintiff disputed the propriety of the cancellation of his shares does not supply either element.

Accordingly, the third claim for relief will be dismissed in its entirety as to Commissioner.com and dismissed as against the individual defendants except insofar as it alleges that they breached their fiduciary duties to plaintiff by cancelling his remaining ten shares for the purpose of freezing him out of the deal, knowing that they had no right to do so.

### IV. Breach of Contract by the Individual Defendants and Commissioner.com

■ The fourth claim for relief asserts that the individual defendants and DWWC breached the Stockholders' Agreement by cancelling his shares. This claim is frivolous. While the Stockholders' Agreement provided DWWC and the individual defendants with options to buy the shares in the event plaintiff offered them for sale, it contained nothing that limited any rights that DWWC or anyone else may have had, or thereafter may have acquired, to cancel those shares.

### V. Breach of Contract by Sports-Line.com, Inc.

■ Plaintiff alleges that Sports-Line.com breached the Development Agreement and the merger agreement. He claims that it breached the former by failing to require that plaintiff's shares be purchased for full consideration pursuant to that contract. He asserts that it breached the latter by failing to pay him for his shares pursuant to the agreement and plan of merger.

Plaintiff was not a party to the Development Agreement. "Under New York law, only an intended beneficiary of a contract may assert a claim as a third-party beneficiary. A third party is an intended beneficiary where either (1) 'no one other than the third party can recover if the promisor breaches the contract' or (2) 'the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party.' "[50] Neither condition is satisfied. Certainly the agreement evidences no intent to permit enforcement by plaintiff. Similarly, it cannot be said that no one other than the plaintiff could recover if SportsLine breached the Development Agreement, as Daedalus plainly could have enforced it. In consequence, plaintiff may not sue as a third-party beneficiary for breach of the Development Agreement. In any case, the Development Agreement contains nothing that required SportsLine or anyone else to buy plaintiff's shares.[51]

So far as the second theory is concerned, the individual defendants canceled plaintiff's shares on or about November 15, 1999, at least three weeks before the effective day of the merger. Whether that cancellation was appropriate or wrongful, it is impossible to see how SportsLine or, more appropriately, Commissioner.com breached the agreement and plan of merger by not paying plaintiff as if he were a shareholder of DWWC three weeks after he ceased being a shareholder.

---

**50.** *Akcess Pacific Group LLC v. Winstar Communications Inc.*, 67 F.Supp.2d 394, 399 (S.D.N.Y.1999) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208 (1985)).

**51.** The parties have briefed this motion on the assumption that New York law governs. The Court therefor applies New York law in the absence of any strong public policy to the contrary. *Akcess Pacific Group LLC*, 67 F.Supp.2d at 399 n. 25 (citing cases).

## VI. Interference With Prospective Economic Advantage

The sixth claim for relief contends that the individual defendants and Commissioner.com's predecessor, DWWC, interfered with plaintiff's prospective economic relations with Commissioner by doing him out of his original ten shares of DWWC stock and thus depriving him of his rightful share of the contingent compensation paid under the merger agreement.

■ In order to state a legally sufficient claim for tortious interference with prospective economic advantage, a plaintiff must allege:

"(1) business relations between the plaintiff and a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff, or used dishonest, unfair or improper means; and (4) injury to the business relationship." [52]

"Wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure." [53]

■ While the question perhaps is not free from doubt, plaintiff, by virtue of his status as a shareholder on November 15, 1999, the date his last shares were cancelled, had a prospective business relationship with SportsLine and/or Commissioner.com on the theory that negotiations for their acquisition of DWWC began prior to that date.[54] The cancellation of the shares precluded the culmination of that relationship. If, as plaintiff alleges, it took place without color of right and for the purpose of freezing plaintiff out of the deal, the individual defendants and DWWC, the liabilities of which passed to Commissioner.com by merger, used wrongful, unfair or improper means. In consequence, the motions to dismiss are denied insofar as they are addressed to the sixth claim for relief.

## VII. Tortious Interference With Contract

■ The seventh claim for relief asserts tortious interference with contract by the individual defendants, DWWC,[55] and Commissioner.com. This claim, too, however, presents a moving target.

The theory of the claim as pleaded is that plaintiff was a third-party beneficiary of the Development Agreement and the agreement and plan of merger, that the cancellation of his shares froze him out of the deal, and that this somehow interfered with those contracts. This, however, is patently insufficient. Plaintiff was not a third-party beneficiary of either the agreement for the reasons stated above.

**52.** E.g., Nadel v. Play–by–Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir.2000).

In its most recent decision on this point the Court of Appeals described the third prong of the test as requiring, as one alternative, a wrongful purpose as opposed to a sole purpose of harming the plaintiff, citing principally Burba v. Rochester Gas and Elec. Corp., 139 A.D.2d 939, 528 N.Y.S.2d 241 (4th Dept.1988), and Nadel. Lombard v. Booz–Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir.2002). The majority in Burba, however, did not articulate the test it applied, while the dissenters stated in as requiring a sole purpose of harming the plaintiff, as did the Circuit in Nadel. In consequence, there is no reason to believe that Lombard's formulation reflects any change in the long established law.

**53.** Lombard, 280 F.3d at 214; accord Riisna v. Brennan, No. 01 Civ. 2698(LAK), 2001 WL 987478, at *1 (S.D.N.Y. Aug.23, 2001) (citing Snyder v. Sony Music Ent. Inc., 252 A.D.2d 294, 300, 684 N.Y.S.2d 235, 239 (1st Dept. 1999)); Protic v. Dengler, 46 F.Supp.2d 277, 279 (S.D.N.Y.), aff'd, 205 F.3d 1324 (2d Cir. 1999) (table).

**54.** Cpt. ¶¶ 28–29.

**55.** DWWC no longer exists and is not a party to the action.

Doubtless recognizing the insufficiency of the claim as pleaded, plaintiff has advanced a new theory in his memorandum. He now argues that the Development Agreement and the agreement and plan of merger "amount to an implied contract arising from [plaintiff's] ownership of stock in DWWC" and that the cancellation of his shares tortiously interfered with that contract.[56] But this theory fares no better than that pleaded in the complaint.

To begin, there is simply nothing in the Development Agreement that gave plaintiff any rights—explicit or implied—with respect to the eventual merger consideration. In consequence, there is no basis for a claim that the cancellation of his shares in November 1999 tortiously interfered with his right to share in that consideration.

So too with the merger agreement, albeit the conclusion comes at the end of a somewhat different path. Plaintiff ceased to be a DWWC shareholder on November 15, 1999. Hence, whatever else may have been wrong with the action of the individual defendants in cancelling plaintiff's shares of November 15, 1999, it cannot have interfered with rights created by the merger agreement because the merger agreement did not come into existence for another three weeks.

### VIII. Unjust Enrichment

Plaintiff seeks to recover against the individual defendants and Commissioner.com, presumably as successor-in-interest to DWWC, on a theory of unjust enrichment.

In order to state a claim for unjust enrichment claim under New York law "plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution."[57]

Here, the individual defendants were enriched at plaintiff's expense by their allegedly wrongful cancellation of plaintiff's shares, as the elimination of those shares gave each of them a larger share of the aggregate merger consideration by depriving plaintiff of the portion that otherwise would have gone to him. If, as plaintiff alleges, the individual defendants wrongfully canceled his shares for the purpose of profiting at his expense, they were enriched unjustly. Accordingly, the eighth claim for relief is sufficient as against the individual defendants.

In contrast, DWWC was not enriched at plaintiff's expense. The merger consideration went entirely to the shareholders of record as of the effective date of the merger, which was on or after December 6, 1999.[58] In consequence, there is not basis for the claim of unjust enrichment against Commissioner.com.

### IX. Oppression of Minority Shareholder

The ninth claim for relief seeks recovery against the individual defendants alone on the ground that the cancellation of plaintiff's shares constituted oppression of a minority shareholder.

It is difficult to understand what plaintiff is driving at here. Certainly plaintiff,

---

**56.** Pl. Mem. 30.

**57.** *Violette v. Armonk Associates, L.P.,* 872 F.Supp. 1279, 1282 (S.D.N.Y.1995): *accord, Michel Pommier Models, Inc. v. Men Women N.Y. Model Mgt., Inc.,* No. 97 Civ. 6837(SAS), 1998 WL 382004, at *7 (S.D.N.Y. Jul.8, 1998); *ICC Industries, Inc. v. Sifavitor S.p.A.,* No. 96

Civ. 5757(LAK), 1997 WL 214969, at *5 (S.D.N.Y. Apr.28, 1997); *In re Motel 6 Sec. Litig.,* Nos. 93 Civ. 2183(JFK), 93 Civ. 2866(JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997).

**58.** *See* Pl. Mem. Ex. E, §§ 1.2–1.3, 3.1.

as a minority shareholder, enjoyed all statutory rights afforded to shareholders generally and was the beneficiary of fiduciary duties owed shareholders by corporate officers and directors. Plaintiff argues that he should be permitted "to avail himself of any remedial statute addressing the issue" of minority shareholder oppression.[59] The only statute he cites, however, is Section 623 of the Business Corporation Law.[60] But Section 623—which establishes the procedure governing the appraisal rights of shareholders dissenting from certain corporate actions[61]—has absolutely no bearing on this case, as plaintiff was not a shareholder as of the effective date of the merger. In any case, Section 623 applies only where some other statute confers an appraisal right, and plaintiff points to no such statute. Accordingly, the ninth claim for relief is insufficient.

### X. Civil Conspiracy

The tenth claim for relief charges the individual defendants and Commissioner.com with conspiracy to defraud, to convert plaintiff's shares, and to oppress him as a minority stockholder.

In view of the dismissal of the conversion and oppression of a minority shareholder claims, as well as part of the fraud claim, this claim ought to be repleaded.

### Conclusion

For the foregoing reasons, the motions by the individual defendants and by defendants SportsLine.com, Inc. and Commissioner.com, Inc. to dismiss the third amended complaint are granted to the extent that

(a) the first, second, fourth, fifth, seventh, ninth and tenth claims for relief are dismissed with leave to replead, on or before June 10, 2002, only the first and tenth claims and those only to the limited extent indicated above, and

(b) the third and eighth claims for relief are dismissed as against Commissioner.com, Inc. The motions are denied in all other respects. What remains of the action, absent the filing of an amendment to the complaint pursuant to the leave granted in paragraph (a) above, therefore are the third and eighth claims for relief against the individual defendants and the sixth claim for relief. For the sake of convenience, the plaintiff shall not file a fourth amended complaint. Should plaintiff avail himself of the leave granted herein, he shall serve and file an amendment to the complaint repleading only the first and tenth claims for relief in accordance herewith.

SO ORDERED.

---

**59.** Pl. Mem. 35.

**60.** N.Y. Bus. Corp. L. § 623 (McKinney 1986).

**61.** See generally Collins v. Telcoa Int'l Corp., 283 A.D.2d 128, 133, 726 N.Y.S.2d 679, 682–83 (2d Dept.2001).